720 F.2d 1511
 33 Fair Empl.Prac.Cas. 829,
33 Empl. Prac. Dec. P 33,973
UNITED STATES of America, Plaintiff-Appellee,
v.
JEFFERSON COUNTY, et al., Defendants-Appellees.
John W. MARTIN, et al., Plaintiffs-Appellees,
v.
CITY OF BIRMINGHAM, et al., Defendants-Appellees.
ENSLEY BRANCH OF THE NAACP, et al., Plaintiffs-Appellees,
v.
George SEIBELS, et al., Defendants-Appellees,
Birmingham Firefighters Association 117, Proposed
Intervenor-Appellant.
James A. BENNETT, et al., Plaintiffs-Appellants,
v.
Richard ARRINGTON, Jr., etc., et al., Defendants-Appellees.
 Nos. 81-7761, 82-7129.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 12, 1983.
Rehearing and Rehearing En Band Denied Jan. 20, 1984.
 
 William W. Conwell and Raymond P. Fitzpatrick Jr., Foster & Conwell, Birmingham, Ala., for the proposed intervenors-appellants in No. 81-7761 and for the plaintiffs-appellants in No. 82-7129.
 William L. Robinson, Stephen L. Spitz, Lawyers' Committee for Civil Rights Under Law, Washington, D.C.; St. John Barrett, Barnett & Alagia, Washington, D.C.; and Susan W. Reeves, Reeves & Still, Birmingham, Ala.; for plaintiffs-appellees, John W. Martin et al. in No. 81-7761 and for defendants-appellees John W. Martin et al. in No. 82-7129.
 Frank W. Donaldson, U. S. Atty., and Caryl P. Privett, Asst. U. S. Atty., Birmingham, Ala.; Wm. Bradford Reynolds, Asst. Atty. Gen. and Robert T. Moore, Richard J. Ritter, Attys., Dept. of Justice, Civil Rights Div., Washington, D.C.; for the plaintiff-appellee United States in No. 81-7761.
 James K. Baker, City Atty.; James P. Alexander and Eldridge D. Lacy, Bradley, Arant, Rose and White, Birmingham, Ala.; for the defendant-appellee, City of Birmingham, in both No. 81-7761 and No. 82-7129.
 Hubert A. Grissom, Jr., David P. Whiteside, Jr. and Michael Hall, Johnston, Barton, Proctor, Swedlaw and Neff, Birmingham, Ala.; for the defendant-appellee Personnel Bd. of Jefferson County, Ala., in both No. 81-7761 and No. 82-7129.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, FAY and ANDERSON, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 In January 1974 the Ensley Branch of the NAACP[1] and John Martin[2] each filed a separate class action complaint in the district court against the Jefferson County, Alabama, Personnel Board (Board) and the City of Birmingham, Alabama (City). They alleged that the Board and the City violated, inter alia, Title VII of the Civil Rights Act[3] through racially discriminatory hiring and promotion in various public service jobs, including firefighters.[4] In May 1975, the United States also filed a complaint in the district court alleging similar discrimination against blacks and women by the Board and the City.[5]
 
 
 2
 These three cases were consolidated for discovery and trial purposes. In December 1976, the district court held a bench trial limited to the issue of the validity of the written tests used by the Board and the City to screen police and firefighter applicants. The court found that the tests had a severe adverse impact on black applicants and concluded that the tests therefore violated Title VII. The court directed entry of final judgment for the plaintiffs on this issue, pursuant to Fed.R.Civ.P. 54(b), and the defendants appealed. While their appeal was pending, the district court tried the remaining claims pending against the Board only.
 
 
 3
 After we ruled on the district court's decision concerning the written tests, Ensley Branch of NAACP v. Seibels, 616 F.2d 812 (5th Cir.) cert. denied sub nom. Personnel Board v. United States, 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980),[6] the plaintiffs, in all three cases, entered into extensive negotiations with the Board and the City which culminated in two proposed consent decrees, one with the Board[7] and one with the City.[8] The former disposed of all of the plaintiffs' claims against the Board; the latter disposed of all the plaintiffs' claims against the City. The two consent decrees incorporated some affirmative action remedies in hiring and promotional policies.[9]
 
 
 4
 The court provisionally approved these consent decrees in June 1981, but reserved final approval until it convened a fairness hearing to consider the objections of all interested parties. The court held that hearing in August 1981, at which it considered, among others, the objections filed by the Birmingham Firefighters Association 117 (BFA),[10] as amicus curiae. The day after the hearing, BFA and two of its members (BFA members) moved, pursuant to Fed.R.Civ.P. 24(a), to intervene of right in each of the three cases, contending that the proposed consent decrees would have a substantial adverse impact upon them. The court denied their motions as untimely, and approved, and entered, both consent decrees.
 
 
 5
 Seven individual white male firefighters (Firefighters) then filed a complaint in the district court against the Board and the City[11] to enjoin the enforcement of the consent decrees on the ground that the operation of the decrees would discriminate against them in violation of Title VII of the Civil Rights Act. They applied for a preliminary injunction, which, after a hearing, the district court denied.
 
 
 6
 The BFA members and the Firefighters then appealed from the court's denials of the motion to intervene and the preliminary injunction. We note provisional jurisdiction to review the denial of the motion to intervene, under our "anomalous rule";[12] if we find the motion to have been properly denied, we must dismiss for lack of jurisdiction. We note jurisdiction, pursuant to 28 U.S.C. Sec. 1292(a)(1) (1976), to review the denial of the preliminary injunction.I.
 
 
 7
 The district court denied the BFA members' motion to intervene on the ground that it was untimely filed. The question of timeliness is largely committed to the district court's discretion; therefore, we review the court's action only for an abuse of discretion. Howse v. S/V "Canada Goose I", 641 F.2d 317, 320 (5th Cir. Unit B 1981); Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977).
 
 
 8
 A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. Stallworth, 558 F.2d at 264-66. This analysis applies whether intervention of right or permissive intervention under Fed.R.Civ.P. 24 is claimed. Id., citing United Airlines, Inc. v. McDonald, 432 U.S. 385, 387, 97 S.Ct. 2464, 2466, 53 L.Ed.2d 423 (1977); NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2602-03, 37 L.Ed.2d 648 (1973); Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir.1970).
 
 
 9
 Under the first factor of the timeliness test, the district court correctly concluded that the BFA members did not act seasonably. The BFA members contend that their motion was timely because they filed it just as soon as they discovered that they might be adversely affected by a final adjudication of the plaintiffs' claims in these cases. It is true, as we said in Stallworth, that mere knowledge of the pendency of an action, without appreciation of the potential adverse effect an adjudication of that action might have on one's interests, does not preclude intervention. The BFA members, however, knew at an early stage in the proceedings that their rights could be adversely affected, as was evidenced by their conversations with the City regarding the tactics the City should take in defending the action; yet they failed to seek intervention.
 
 
 10
 The BFA members contend that their failure to move to intervene was justified, and therefore should have been excused, because they were entitled to assume that the City and the Board would protect their interests. There are, of course, certain circumstances under which one is entitled to assume that a party will protect one's interests. The Supreme Court made this clear in United Airlines, which the BFA members argue controls this case. There, a stewardess filed a class action contesting a no-marriage rule that United applied only to female employees. The district court refused to certify a class, and the stewardess failed to appeal. Another stewardess moved the district court for leave to intervene in order to file the appeal. The district court denied her motion, and she appealed from that denial. The Court of Appeals reversed, with instructions to permit intervention on remand, and the Supreme Court affirmed. The Supreme Court justified the failure of the second stewardess to move to intervene earlier because "as soon as it became clear to [her] that the interests of the unnamed class members would no longer be protected by the named class representative, she promptly moved to intervene...." Id. 432 U.S. at 394, 97 S.Ct. at 2470. The Court thus recognized that the second stewardess had the right to rely on the first to represent her.
 
 
 11
 The BFA members had no identity of interest with the City in the way that the unnamed class member shared an interest with the named class representative in United Airlines. From the beginning, the Board and the City represented a wide range of occupations in the public sector and had different cost-benefit settlement interests, and incentives, from those of the BFA members. Thus, the mere fact that the Board and the City made a settlement allegedly adverse to the interests of BFA members does not mean that they "changed their position and became adverse" as the BFA members alleged in their motion to intervene. Rather, it underscores the variance in interest that existed when the litigation commenced. BFA members, having made an apparently ill-advised decision to rely on others to advance their interests, knowing that they could be adversely affected, cannot now be heard to complain.
 
 
 12
 Under the second factor of the timeliness test, the district court was required to consider "how much prejudice would result [to the existing parties] from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case." Stallworth, 558 F.2d at 267. The BFA members knew of their interest in these cases prior to the first trial. They could have moved to intervene then, but chose to wait until after two trials and a long complex negotiation process had taken place. The court's grant of their motion to intervene would plainly have prejudiced the existing parties, since it would have nullified these negotiations with the Board and allowed a pattern of past discriminatory practices to continue.
 
 
 13
 The third factor of the test required the court to consider whether the BFA members would be prejudiced if denied intervention. Prejudice, as the term is used in this context, originally referred to a consideration of whether the would-be intervenor sought intervention under Fed.R.Civ.P. 24(a) (intervention of right) or rule 24(b) (permissive intervention). Stallworth, 558 F.2d at 265, 266. Rule 24(a) expresses a concern for the extent to which a nonparty risks his interest in the property or transaction involved in the action unless his interest is adequately represented by existing parties. Rule 24(b) expresses a similar concern where the nonparty may have a common question of law or fact determined to his disadvantage. Stallworth expands the rule 24(a) or rule 24(b) inquiry to allow "varying degrees of harm among intervenors of the same type to be taken under consideration." 558 F.2d at 266. However, the discussion in Stallworth still indicates that the thrust of the inquiry must be the extent to which a final judgment in the case may bind the movant even though he is not adequately represented by an existing party. We note that this third factor thus has weight only in the situation where (a) the judge cannot anticipate the extent to which a final judgment will bind the movant, or (b) the judge finds that although the movant has an identical interest with a party, he has a sufficiently greater stake than the party that the party's representation may be inadequate to protect the movant's interest. Otherwise, where the movant has no identity of interest with a party and thus could not be bound, or where his interest is identical with a party and consequently he is adequately represented, we would find no prejudice sufficient to give weight to the third factor.[13]
 
 
 14
 We therefore proceed to consider the extent to which it appeared to the district court that the BFA members might be bound by the consent decrees in these cases. We have not yet been called upon to rule on the preclusive effect a consent decree in a Title VII case might have on one subsequently claiming reverse discrimination.[14] Other circuits have faced the issue,[15] but the results of these cases are sufficiently unclear to warrant careful discussion here.
 
 
 15
 The principles of res judicata and collateral estoppel apply to consent decrees as well as to ordinary judgments entered by a court.[16] These doctrines prevent the attack of a prior judgment by parties to the proceedings or by those with sufficient identity of interests with such parties that their interests are deemed to have been litigated in those proceedings. A final judgment may not, however, bind a nonparty when his interests were not represented; thus, situations can arise where a judgment purporting to affect a nonparty must not be applied to him. There are, additionally, limitations on the extent to which a nonparty can undermine a prior judgment. A nonparty may not reopen the case and relitigate the merits anew; neither may he destroy the validity of the judgment between the parties.
 
 
 16
 In applying these principles to consent decrees, some courts have raised a specter that any action having a burden, financial or otherwise, on a consent decree is an "impermissible collateral attack" on the decree.[17] We do not follow this path to the extent that it deprives a nonparty to the decree of his day in court to assert the violation of his civil rights. If we refuse to hear a discrimination claim by a person whose interests are not represented in the decree, we create an exception to the limitations we presently place on res judicata and collateral estoppel. We should not undertake such action lightly. Naturally, that the employer undertook the challenged action pursuant to a court-approved consent decree or a valid affirmative action plan (see, e.g. United Steelworkers v. Weber, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979)), would be evidence of nondiscriminatory intent by the employer, and the nonparty could not seek to relitigate the merits or reasonableness of the decree vis-a-vis the parties to the decree.
 
 
 17
 In their motion to intervene, the BFA members could not have alleged that they had suffered any reverse discrimination as a result of the Board's or the City's implementation of the affirmative action plan prescribed by the consent decrees, because the court had not yet approved those decrees. BFA members could present such a claim now, however, since the decrees have been approved and entered. For example, they could do so by instituting an independent Title VII suit, asserting the specific violations of their rights. The consent decrees would only become an issue if the defendant attempted to justify its conduct by saying that it was mandated by consent decree.[18] If this were the defense, the trial judge would have to determine whether the defendant's action was mandated by the decree and, if so, whether that fact alone would relieve the defendant of liability that would otherwise attach. This is, indeed, a difficult question. One of the prime reasons why a trial judge must proceed with caution and circumspection in approving consent decrees,[19] especially when the interests of all who may be affected by the decree are not adequately represented, is to avoid this very question. We should not, however, preclude potentially wronged parties from raising such a question merely because it is perplexing. Since we assume that the forum hearing any future suit by the would-be intervenors alleging discrimination would consider their claims carefully, we hold that the district court was justified in finding no prejudice to the BFA members' rights in denying intervention.[20]
 
 
 18
 Finally, under the fourth timeliness factor, there are no mitigating circumstances as were present in Stallworth. There, when the defendants sought permission to inform the would-be intervenors of their rights at an earlier point in the litigation, the plaintiffs thwarted the attempt. When the would-be intervenors ultimately did move to intervene, plaintiffs complained that intervention should not be allowed because the motion was untimely. The court found the plaintiffs' problem to be partly of their own making and considered this as a factor in allowing intervention.
 
 
 19
 Considering the interests under the four-part test articulated in Stallworth, we find ample justification for the trial court's determination that intervention should be denied as untimely. The interests of finality of the litigation, the prejudice intervention would have caused the parties to the consent decrees, and the BFA members' early knowledge that their rights could be affected combined to support the trial judge's exercise of his discretion to deny the intervention here. The possibility that the BFA members might be prejudiced by the consent decrees in these cases does not outweigh these considerations. Because we conclude that the district judge did not abuse his discretion, and because the proper denial of a motion to intervene is not a final judgment, United States v. United States Steel Corp., 548 F.2d 1232, 1236 (5th Cir.1977), we dismiss the BFA members' appeal for lack of jurisdiction. We now consider the Firefighters' appeal from the district court's denial of their application for a preliminary injunction.
 
 II.
 
 20
 The grant or denial of a preliminary injunction is a matter within the discretion of the district court, reviewable only for abuse of discretion or if contrary to some rule of equity. Shatel Corp. v. Mao Ta Lumber and Yacht Corp., 697 F.2d 1352, 1354 (11th Cir.1983). That discretion is guided by four prerequisites: the movant must show (1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest. Id. at 1354-5. The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant "clearly carries the burden of persuasion" as to the four prerequisites. Canal Authority v. Callaway, 489 F.2d 567 (5th Cir.1974). "The burden of persuasion in all of the four requirements is at all times upon the plaintiff." Id. at 573. Because the Firefighters did not carry the burden as to irreparable harm and, thus, were not entitled to a preliminary injunction, it is unnecessary to address the other prerequisites to such relief.[21]
 
 
 21
 While this court has indicated that it will presume irreparable harm in a Title VII case in which the employee has exhausted his administrative remedies (Middleton-Keirn v. Stone, 655 F.2d 609 (5th Cir.1981)), Firefighters have not pursued such administrative remedies here. Hence, the presumption cannot apply. Moreover, Firefighters have made no showing of possible irreparable injury. Even if they eventually prevail on the merits, they will have suffered no injury that could not adequately be compensated through an award of back pay and seniority points along with compelled future promotion. As the Supreme Court stated in Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (citation omitted) (emphasis in original):
 
 
 22
 The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.
 
 
 23
 We find no abuse of discretion in the district court's denial of the preliminary injunction.
 
 
 24
 The appeal in No. 81-7761 is DISMISSED; in No. 82-7129, the district court is AFFIRMED.
 
 
 
 [1]
 The Ensley Branch of the NAACP is a membership organization of black citizens of Birmingham, Alabama. It, along with three black males who had applied for positions with the City of Birmingham, Alabama, and taken tests administered by the Jefferson County, Alabama, Personnel Board, filed a class action complaint against the City, George Seibels, Jr., then Mayor of Birmingham, the Board, the three members of the Board and the director of the Board. Of these parties, only the plaintiffs, the City, the Mayor (now Richard Arrington), and the Board are parties in this appeal. See infra notes 7 & 8
 
 
 [2]
 John Martin is a black male who applied for a position with the City of Birmingham and was certified by the Jefferson County Personnel Board but rejected by the City. He and six other black applicants for employment with the City, or City employees denied promotion, filed a class action against the defendants named in the suit brought by the Ensley Branch of the NAACP, and three Jefferson County Commissioners who plaintiffs alleged were responsible for Board activities. Only the plaintiffs, the City, the Mayor, and the Board are parties in this appeal. See infra notes 7 & 8
 
 
 [3]
 The plaintiffs alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2000e-17 (1976 & Supp. V 1981), as amended by the Equal Employment Opportunity Act of 1972 (Pub.L. 92-261, March 24, 1972); 42 U.S.C. Sec. 1981 (1976), providing for equal rights for all persons within the United States to make contracts; 42 U.S.C. Sec. 1983 (1976 & Supp. V 1981), to redress deprivation under color of law of rights, privileges and immunities secured by the equal protection clause of the fourteenth amendment
 
 
 [4]
 The Board and the City share responsibility for public sector hiring in the City in the following manner. The Board administers examinations to applicants for classified City employee positions, adopts rules and regulations governing the operation of the civil service system, and administers the system in Jefferson County. The Board certifies to the appointing authority, the City, the names of three eligible applicants for an open position. The City then chooses an employee. Classified positions include all full-time City jobs except common laborers, judicial officers, elected officials, and a few executive positions
 
 
 [5]
 The United States in its suit added to the claims stated in the other cases violations of the State and Local Fiscal Assistance Act of 1972, as amended, 31 U.S.C. Sec. 1221 (1976), and Omnibus Crime Control and Safe Streets Act of 1968, as amended, former 42 U.S.C. Sec. 3766(c)(1) (1976)
 
 
 [6]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [7]
 The Board was the only defendant executing the consent decree. The plaintiffs abandoned their claims against the other county defendants. See supra notes 1 and 2
 
 
 [8]
 The City was the only defendant executing the consent decree although the Mayor was referred to in the decree as a party to the settlement
 
 
 [9]
 The consent decrees set forth an extensive scheme of remedies: injunctions against further discrimination on the basis of race or sex and against retaliatory measures by the defendants against members of the plaintiff classes; goals for the recruitment and hiring of blacks and women to correct the effects of past discrimination; and some awards of back pay to class members allegedly discriminated against during a several year period prior to the entry of the decrees
 
 
 [10]
 The Birmingham Firefighters Association 117 is a labor association of firefighters employed by the City. It represents the interests of the majority of the City-employed firefighters and negotiates on their behalf with the City
 
 
 [11]
 The white male firefighters, none of whom were in the BFA members group, also named as defendants Richard Arrington, Mayor of the City, the members of the Board, and the Director of the Board. None of these additional defendants are parties in this appeal
 
 
 [12]
 Stallworth v. Monsanto Co., 558 F.2d 257 (5th Cir.1977) sets forth our rule:
 Under this circuit's "anomalous rule"[7] governing the appealability of orders denying intervention, we have provisional jurisdiction to determine whether the district court erroneously concluded that the appellants were not entitled to intervene of right under section (a) of Rule 24, or clearly abused its discretion in denying their application for permissive intervention under section (b) of Rule 24. If we find that the district court's disposition of the petitions was correct, or within the ambit of its discretion, then our jurisdiction evaporates because the proper denial of leave to intervene is not a final decision, and we must dismiss these appeals for want of jurisdiction. But if we find that the district court was mistaken or clearly abused its discretion, then we retain jurisdiction and must reverse. In either event, we are authorized to decide whether the petitions for leave to intervene were properly denied.
 (Citations omitted.) Footnote 7 in the above statement cites criticism of this rule, advocating a simple review of the denial of intervention as a final order. 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1923 (1972).
 
 
 [13]
 The burdens of cost and delay the would-be intervenor would suffer if required to bring a future lawsuit do not constitute prejudice under the third Stallworth factor. He would have those burdens at any time he sought to enforce his rights in court. He is merely getting a free ride if the court allows intervention. Naturally, the court can order the intervenor to pay his share of costs if it grants the motion, so the financial "gain" of intervening is by no means certain
 
 
 [14]
 The opinions in Thaggard v. City of Jackson, 618 F.2d 272 (5th Cir.1980), and United States v. City of Miami, 614 F.2d 1322 (5th Cir.1980), which dealt with these issues, were both later vacated on other grounds
 
 
 [15]
 See infra note 17
 
 
 [16]
 This discussion assumes that consent decrees and judgments are equivalent for res judicata and collateral estoppel purposes. Some courts give consent decrees such preclusive effects; others do not. For a discussion of the rationales for giving consent decrees less preclusive effect than an ordinary judgment, namely, that the merits are not fully litigated, see 1B Moore on Federal Practice Sec. 444(3) (2d ed. (1983))
 
 
 [17]
 This idea arose from a spate of cases finding, in specific circumstances, that the plaintiff's collateral attack on the prior judgment was impermissible. See, e.g., Black and White Children of the Pontiac School System v. School Dist., 464 F.2d 1030 (6th Cir.1972) (stating that a suit seeking injunction against enforcement of a busing order on the ground of unforeseen difficulty should have been brought as a suit to modify the order in the original court.); Prate v. Freedman, 430 F.Supp. 1373 (W.D.N.Y.) aff'd 573 F.2d 1294 (2d Cir.1977) (refusing to allow an attack on the merits of the judgment); Oburn v. Shapp, 70 F.R.D. 549 (E.D.Pa.) aff'd 546 F.2d 417 (3d Cir.1976) cert. denied 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). At some point, these cases began to be cited for the proposition that all collateral burdens on a consent decree are per se impermissible. See, e.g., Dennison v. City of Los Angeles, 658 F.2d 694 (9th Cir.1981)
 
 
 [18]
 It should be clear from this discussion that it is not necessary for the BFA members to make a frontal attack on the validity of the decrees between the parties in order to assert a discrimination claim against their employers
 
 
 [19]
 The judge must be cautious in approving consent decrees only to the extent that he should be aware the decree is more likely to be of little effect the fewer parties there are in the suit to be bound. The consent decree by definition only binds those who consent (either expressly or impliedly)
 
 
 [20]
 For a discussion paralleling this analysis, see Ashley v. City of Jackson, --- U.S. ----, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983) (Rehnquist, J. dissenting from denial of certiorari)
 
 
 [21]
 The Firefighters argue that we should be deciding their appeal on the merits because "the validity of the consent decrees is a legal question, as is the question of whether a collateral attack [on the consent decrees] will lie. The only conclusion of law entered by the district court on these issues was a finding that the attack is 'without merit.' " The only appealable judgment that has been entered in the case, however, is the denial of the preliminary injunction. While we may have the power in certain circumstances to consider a preliminary injunction appeal as if on the merits, Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430, 435 n. 6 (5th Cir.1981), here, as in Piedmont, there was no agreement by the parties to consolidate this appeal with an appeal on the merits; indeed, appellants have not even expressly terminated their presentation of evidence. The judge considered his order a decision only on the preliminary injunction motion; it states that beyond the injunction, "the case is continued for further development and potential trial." Therefore we decline to reach the merits
 Firefighters, in their attempt to have us decide the merits of their case, point to cases in which the appellate court overturned a trial court's decision as to a preliminary injunction where the denial was based entirely on an erroneous view of the law. Whether the court's conclusion of law as to success on the merits is correct or not, we cannot review it in this case because Firefighters have not carried their burden to show irreparable harm. See supra, page 1520. In this context, any pronouncement on Firefighters' chances of success on the merits would be gratuitous.
 Obviously, where a preliminary injunction has been granted based on an error of law even as to only one of the four prerequisites, the injunction must fall because the movant has not met his burden of persuasion on all four counts. Where the injunction is denied, the error of law would have to extend to every prerequisite on which the trial court found against the movant to warrant reversal. Firefighters should note that the trial judge's conclusions of law as well as his findings of fact at the preliminary injunction stage are not binding on him in his determination of the merits. University of Texas v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).