Michael HOWARD, et al., Plaintiffs,

v.

John L. McLUCAS, et al., Defendants.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al., Plaintiffs,**

v.

John C. STETSON, Secretary, U.S. Air Force, Defendant.

Civ. A. Nos. 75–168–MAC, 79–66–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 19, 1984.

Jack Greenberg, New York City, Bill Lann Lee, Los Angeles, Cal., Thomas M. Jackson, Charles A. Mathis, Jr., Macon, Ga., Austin E. Catts, Atlanta, Ga., for plaintiffs.

Anne L. Weismann, Dept. of Justice, Washington, D.C., John L. Lynch, Asst. U.S. Atty., Macon, Ga., for defendants.

### ORDER

OWENS, Chief Judge.

On July 31, 1984, a motion to intervene was filed by the "Warner Robins Constitutional Rights Fund, Inc.," and certain named individuals. By order dated August 9, 1984, this court found that the Warner Robins Constitutional Rights Fund, Inc., as a corporate entity, had no possible stake in the outcome of this suit; leave to intervene was therefore denied. Not yet decided is whether the named plaintiffs in intervention (hereinafter referred to as movants) are entitled to prevail on their motion to intervene under Fed.R.Civ.P. 24(a) or (b).

■ The present parties to this action have agreed to settle this case without a trial. A proposed Consent Decree setting forth the terms of this settlement agree-ment has been submitted for court approval pursuant to Fed.R.Civ.P. 23(e). Movants contend that their constitutional, statutory, property, and contractual rights will be adversely affected if the Consent Decree is approved. Therefore, they seek to intervene and become parties to this lawsuit. As parties, they would have the right to refuse to settle the case under the terms of the Consent Decree. However, in order to intervene they must meet two requirements.

First, they must demonstrate that they have standing, *i.e.,* they must show that the Consent Decree will have an actual, adverse effect upon their rights. *See, e.g., Doherty v. Rutgers School of Law-Newark,* 651 F.2d 893, 899–900 (3rd Cir.1981). In *Doherty,* the court, citing numerous cases from other circuits, stated the general rule of standing as applicable in "reverse discrimination" claims such as this, *i.e.,* whites who seek to challenge an affirmative action provision must show that they would have been eligible for the benefit set aside for minorities but for the affirmative action plan. *Id.*

Second, even if movants have standing, they must show that intervention would be timely, and that intervention in the present action—as opposed to commencement of a separate lawsuit—is necessary to preserve their purported interests. *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir. 1983).

*Standing*

■ Movants allege that both of the primary provisions of relief set forth in the Consent Decree will adversely affect their rights. As to the 240 promotions set aside for blacks, movants allege that this provision will "deprive many of the [individual named plaintiffs in intervention] the opportunity to receive deserved promotions for which they will become eligible." Proposed Complaint in Intervention, § 5, ¶ 4. Concerning the $3.75 million monetary award, movants claim that it is unlawful for them to be excluded from this government expenditure solely because they are

white. *Id.* § 6, ¶¶ 3–4. Neither of these arguments is sufficient to vest movants with standing.

Movants have no vested right or entitlement to a promotion under the Warner Robins promotion process. Warner Robins does not operate under a seniority system. A complicated computer ranking process screens all employees for potential promotions. No job announcements are posted. Employees do not apply for promotions, and no employee has an enforceable basis for considering himself as "next in line" for any future opening. Clearly, the Consent Decree does not impair any vested rights of movants.

Movants do have a generalized expectation of being considered with perhaps hundreds of others for promotions. But the Consent Decree, as a practical matter, has only a de minimus effect upon this general expectancy, as the Decree affects only a small fraction of the total number of promotions which will occur during the life of the promotional provision of the Decree. The parties estimate that all 240 promotions set aside for blacks will be filled within two years. During this two-year period, 3600 promotions are anticipated at Warner Robins. Thus, the Consent Decree affects only 6½% of the total promotions expected; movants will be entitled to compete for the remaining 93½%, or 3366, promotions.

Under these circumstances, movants have failed to demonstrate that the Consent Decree will adversely affect their rights. Movants have no entitlement to any of the 240 promotions. The effect upon their general expectancy is de minimum at most. Accordingly, movants do not have standing to intervene for the purpose of challenging the promotional provisions of the Consent Decree.

■ Movants similarly lack standing to contest the monetary award proposed in settlement of this case. The defendant United States Air Force in the manner provided by law has agreed to pay this sum. Paying the plaintiff class is certainly not unlawful, as this court could have ordered the defendant to pay this amount—and possibly more—to the exclusion of movants had this case gone to trial. 42 U.S.C.A. § 2000e–5(g) (West 1981). Insofar as movants challenge the amount of the award, they obviously lack standing. How the government chooses to spend its money is not a justiciable concern. Movants, like taxpayers, cannot invoke the jurisdiction of this court to question federal expenditures. *See generally Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

*Timeliness and the Preservation of Movant's Rights*

Separate and apart from the standing requirement, movants must also demonstrate that intervention would be timely and necessary for the preservation of whatever rights they may have in this matter. The leading decision on this issue is *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir.1983). In that case, white, male fire fighters in Jefferson County, Alabama moved to intervene in a pending Title VII lawsuit in order to contest a proposed Consent Decree which provided for affirmative relief. The court held that four factors must be considered in ruling upon the motion to intervene: (1) the length of time during which the movants knew or should have known of their possible interest in the case; (2) the extent to which the existing parties will be prejudiced by intervention due to the movants' failure to intervene as soon as they knew or should have known of their possible interest; (3) the extent to which the movants would be prejudiced or foreclosed from litigation if intervention is denied; and (4) the existence of any special or unusual circumstances. *Id.* at 1516. In *Jefferson County,* the court of appeals affirmed the district court's denial of leave to intervene. The court ruled that denial of leave to intervene would not prejudice the white fire fighters' rights since, as non-parties, they could assert their claim of "reverse discrimination" in a separate lawsuit, and, should they ultimately prevail, an award of backpay would provide adequate

compensation for their injuries. *Id.* at 1519–20.

■ This case demands the same result. Movants have had every reason to know of this suit since its inception in 1975. The present parties have labored to reconstruct the record of thousands of personnel actions and have identified as best as possible the actual impact of past discrimination. After extensive statistical analyses and thorough negotiation by and among eminently qualified Title VII attorneys a settlement has been reached. The present parties would be substantially prejudiced by movants' intervention at this stage. Movants, on the other hand, would not be prejudiced by denial of intervention. They may commence a separate lawsuit if they so desire (assuming subsequent events result in a more concrete demonstration of standing), as they are not precluded by the Consent Decree. Moreover, they were allowed to be present and cross-examine witnesses at the fairness hearing held on August 9, 1984. Their objections have been filed and will be considered by the court. There are no unusual circumstances demanding intervention. Indeed, the court perceives the fact that the Decree affects only 6½% of all promotions as a circumstance militating against intervention. As in *Jefferson County,* movants' motion to intervene is neither timely nor necessary for the preservation of movants' asserted rights.

### Conclusion

Movants, having failed to demonstrate standing to become parties capable of intervening in this action, and, alternatively, having failed to demonstrate that their motion is timely and necessary for the preservation of their asserted rights, are hereby DENIED leave to intervene in this action. Fed.R.Civ.P. 24.