**J. Dale MANN, Plaintiff,**

v.

**CITY OF ALBANY, Defendant.**

**Civ. No. 85–262–ALB–AMER (DF).**

United States District Court,
M.D. Georgia,
Albany–Americus Division.

June 6, 1988.

C. Nathan Davis, Albany, Ga., for plaintiff.

James V. Davis, C.B. King, Thomas S. Chambless, Albany, Ga., for defendant.

FITZPATRICK, District Judge.

This case is before the court on cross-motions for summary judgment. Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; 42 U.S.C. § 1983; and, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend XIV, § 1. The essence of these claims is that Plaintiff J. Dale Mann, a white male, was not promoted solely because of his race and that the actions of the Defendant City of Albany (Albany) constituted reverse racial discrimination. Southeastern Legal Foundation, Inc., is participating in this action as an *amicus curiae*. All parties have moved the court for summary judgment, and the Court's ruling on these motions is set forth below.

## I. BACKGROUND

Plaintiff Mann is a white male and has been a major with the Albany Police Department since 1979. In April of 1985, the position of Assistant Chief of the Police Department became vacant and the Albany Personnel Office solicited applications to fill the position. Major Mann applied for the vacant position as did three other officers with the Police Department. The position of Assistant Police Chief was eventually filled on or about April 26, 1985 by Colonel Washington Long, the only black applicant.

On June 3, 1985, Plaintiff Mann submitted a written inquiry to the Personnel Office regarding the selection procedure followed in filling the position of Assistant Police Chief. Personnel Director Bruce Townsend responded by Memorandum on June 20, 1985:

In response to your letter of June 3, 1985 I have reviewed the procedures used in the selection of an Assistant Police Chief. In reaching the selection, the Police Chief was bound by the provisions of the above referenced Court Injunction [*Johnson v. City of Albany*, United States District Court, Middle District of Georgia, Civil Action No. 1200]. Specifically, one half of all job vacancies must be filled, subject to availability of qualified applicants, by hiring or promoting black persons.

Due to the previous selection being white and the fact that there was a qualified black person who applied for the job, the selection had to be black to comply with the provisions of the Court Injunction. Therefore you could not be selected for the position.

The *Johnson v. City of Albany* case referenced by Mr. Townsend was a race discrimination case filed in 1972 by black employees of the City of Albany challenging Albany's employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* In 1976, Judge Wilbur Owens of this District made a finding of racial discrimination, *see Johnson v. City of Albany*, 413 F.Supp. 782 (M.D.Ga.1976), and issued a Permanent Injunction to remedy the situation. This Permanent Injunction provided in pertinent part:

. . . .

3. To further insure equal employment opportunities the defendants within 180 days shall study all employment policies, all jobs, job classifications and descriptions, rates of pay, employee benefits and seniority rules of all City of Albany employees and shall prepare and submit to the court proposed uniform employment policies, job classifications and descriptions, rates of pay, employee benefits and seniority rules. To the extent not disapproved of by the court in writing within thirty (30) days after filing, such uniform employment policies, job classifications and descriptions, rates of pay, employee benefits and seniority rules shall be thereafter utilized by the defendants.

4. The objective of this order is to correct the imbalance in employment opportunity that now exists by first creating a plan having as a goal the achieving of a work force in which the proportion of total black employees to total white employees viewed (a) overall, (b) by job classification and description, (c) by department, and (d) by rate of pay, is at least equal to the proportion of blacks to whites in the working age population as shown by the most recent Albany, Georgia, Standard Metropolitan Area reports of the Bureau of the Census. Until that objective is reached the defendants *subject only to the availability of qualified applicants,* shall fill at least one-half of all job vacancies by hiring or promoting black persons.

. . . .

Permanent Injunction Order of Judge Owens in *Johnson v. City of Albany,* C.A. No. 1200 (M.D.Ga. Sept. 2, 1976). The *Johnson* case was never appealed.

Major Mann then filed a timely complaint with the Equal Employment Opportunity Commission (EEOC) in July of 1985 and received his right-to-sue letter on or about September 23, 1985. Major Mann filed this particular suit on December 13, 1985, and Defendant Washington Long was added as a party-defendant on March 30, 1987.

## II. CONCLUSIONS OF LAW

### A. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure allows for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon motion and after adequate time for discovery, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A movant may discharge his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The evidence and all factual inferences, however, must be viewed in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.,* 734 F.2d 637, 638 (11th Cir.1984).

### B. *Impermissible Collateral Attack Doctrine*

 Defendant Albany initially raises Judge Owens' Permanent Injunction Order as a twofold defense to Plaintiff's claims. Albany first argues that this reverse discrimination suit is inappropriate and that Plaintiff must first attempt to intervene in the original *Johnson* action since Judge Owens retained ongoing jurisdiction. The Eleventh Circuit, however, has addressed this issue and condoned reverse discrimination suits in situations similar to Plaintiff's. *United States v. Jefferson County,* 720 F.2d 1511, 1518 (11th Cir.1983); and, *In re Birmingham Reverse Discrimination Employment Litig.,* 833 F.2d 1492, 1495 (11th Cir.1987) (*In re Birmingham*). The Eleventh Circuit in *Jefferson County* rejected the "impermissible collateral attack" doctrine [1] "to the extent that it deprives a nonparty to the decree of his day in court to assert the violation of his civil rights." *Jefferson County,* 720 F.2d at 1518. While the decree at issue *sub judice* is a court Order and not a consent decree, this court finds that *Jefferson County* and *In re Birmingham* are the appropriate precedents to follow on this issue. Thus, Plaintiff

1. The "impermissible collateral attack" doctrine developed out of several cases from various circuit courts. *See, e.g., Black and White Children of the Pontiac School Sys. v. School Dist.,* 464 F.2d 1030 (6th Cir.1972); *Prate v. Freedman,* 430 F.Supp. 1373 (W.D.N.Y.), *aff'd,* 573 F.2d 1294 (2d Cir.1977); *O'Burn v. Shapp,* 70 F.R.D. 549, (E.D.Pa.), *aff'd,* 546 F.2d 417 (3d Cir.1976), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). This doctrine stands for the proposition that any separate action which places a burden of any type on a consent decree is an "impermissible collateral attack" on that decree.

Mann's reverse discrimination suit is appropriate, and the court will not force him to intervene in the original *Johnson* case.[2]

## C. *Consent Decree v. Court Order*

Before moving on to the specific arguments set forth by the parties, the court is compelled to first analyze a particular issue not vigorously raised or discussed by either party, but which has a definite bearing on this case, i.e., the distinction between a consent decree and a court order. Black's Law Dictionary defines consent decree as:

> a decree entered in an equity suit on consent of both parties; it is not properly a judicial sentence, but is in the nature of a solemn contract or agreement of the parties, made under the sanction of the court, and in effect an admission by them that the decree is a just determination of their rights upon the real facts of the case, if such facts had been proved. *It binds only the consenting parties;* and is not binding upon the court.

Black's Law Dictionary 370 (5th ed. 1979) (emphasis added). The majority of cases cited to the court by the parties deal solely with consent decrees or voluntary affirmative action plans.[3]

On the other hand, a court decree is defined as:

> a sentence or order of the court, pronounced on hearing and understanding all the points in issue, and determining the rights of all the parties to the suit, according to equity and good conscience. *It is a declaration of the court announcing the legal consequences of the facts found.*

Black's Law Dictionary 369–70 (5th ed. 1979) (emphasis added). At issue in the present case is a court Order which resulted from adversarial proceedings. Though the legal analysis for claims of reverse discrimination under both a consent decree and a court decree are the same, the very distinctions pointed out above between the two are what dictate the outcome of this case.

Plaintiff attempts to argue, however, that he is not questioning Judge Owens' Order, but Albany's Plan thereunder. The court finds that the Order and the Plan cannot be so separated. Pursuant to Paragraph 3 of the Permanent Injunction Order, *supra,* p. 3, any employment policy established by Albany and not disapproved of by Judge Owens was implicitly approved and adopted by the Order. Consequently, the Order and the Plan must be dealt with together.

## D. *Res Judicata*

■ The Eleventh Circuit in *In re Birmingham* recently set forth the proper analysis for reverse discrimination actions against a city operating under a court decree which was the product of a racial discrimination suit. The threshold issue for the court's determination is whether the interests of the subsequent reverse discrimination plaintiff were adequately represented by a party to the original action. If the answer to this question is yes, then, under the principles of *res judicata,* the subsequent reverse discrimination plaintiff is bound by the original decree.[4] *In re Birmingham,* 833 F.2d at 1498.

---

**2.** This ruling does not in any way suggest that Plaintiff could not have moved to intervene in *Johnson* or that he might not be able to intervene in the future. The court merely finds that Plaintiff will not be forced to abandon this action under the "impermissible collateral attack" doctrine.

**3.** The Eleventh Circuit has specifically held that voluntary consent decrees and voluntary affirmative action plans should be treated synonymously for the purposes of reverse discrimination analysis. *In re Birmingham,* 833 F.2d at 1501.

**4.** In order for *res judicata* to operate as a bar to a subsequent action, the plaintiff in the subsequent action had to have either been a party to the original action or had such an identity with a party to the original action that he can be treated as a party for preclusion purposes. *See* Black's Law Dictionary 1174 (5th ed. 1979). This second test is treated by the Eleventh Circuit as identical to the threshold issue set forth above. Thus, this initial inquiry is, for all intents and purposes, a *res judicata* analysis.

■ This analysis highlights the distinction between a consent decree and a court order. In determining that the individual plaintiffs were not bound by the earlier consent decree, the court in *In re Birmingham* discussed several factors: (1) the City of Birmingham did not mount a vigorous defense to the initial racial discrimination suit; (2) the initial suit was never tried by the district court; (3) Birmingham voluntarily entered into the consent decree; and (4) Birmingham's interest was that of a disinterested stakeholder in the contested promotions. *Id.* at 1499. In the case before this court, these very factors mandate a different outcome. First, Defendant Albany did mount a vigorous and extensive defense to the original racial discrimination suit. *See Johnson v. City of Albany, Georgia,* 413 F.Supp. 782 (1976). The *Johnson* case was filed in 1972 and, after four years of extensive discovery, was decided in 1976 by the court. Second, the *Johnson* case was tried before Judge Owens on March 2 and 3, 1976, *id.* at 787, and the court found that Albany's history of past and present racial discrimination necessitated the entry of a permanent injunction to remedy the situation. Third, all of the actions taken in the *Johnson* case were adversarial and non-voluntary on the part of Albany. Finally, the court cannot find that Albany was simply a disinterested stakeholder in the promotions at issue. In light of Albany's vigorous defense, the adjudication of past racial discrimination, and the non-consensual nature of the *Johnson* proceeding, the court finds that Albany did exhibit a strong interest in protecting both its hiring practices and its promotion system. This analysis leads the court to only one conclusion: Defendant Albany adequately represented the interests of Plaintiff Mann in the original *Johnson* action. Thus Plaintiff Mann is bound by Judge Owens' Permanent Injunction Order and Albany's action taken thereunder. Summary judgment is appropriate in favor of Defendants.

### E. *Reverse Discrimination*

■ Assuming *arguendo*, however, that Plaintiff Mann was not adequately represented by Defendant Albany in *Johnson,* the court will proceed to the Eleventh Circuit's second phase of reverse discrimination analysis. *In re Birmingham,* 833 F.2d at 1500. This second phase of analysis becomes significant when, as in the case at bar, the defendant raises the original decree as a justification for its actions. *Id.* This Title VII analysis is a two-part inquiry established by the Supreme Court in *Johnson v. Transp. Agency,* 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). First, the court must determine whether consideration by defendant of race or sex "was justified by the existence of a 'manifest imbalance' that reflected underrepresentation of women [or minorities] in 'traditionally segregated job categories.'" *Id.,* 480 U.S. at ——, 107 S.Ct. at 1452 (quoting *Steelworkers v. Weber,* 443 U.S. 193, 197, 99 S.Ct. 2721, 2724, 61 L.Ed.2d 480 (1979)). This initial question was answered affirmatively by Judge Owens in 1976, *Johnson, supra,*[5] when he found the existence of past and present discrimination in Albany, and this court is bound by that decision. Accordingly, the court finds that Albany's consideration of race was justified.

The second *Johnson v. Transp. Agency* inquiry is whether the plan "unnecessarily trammeled the rights of ... [nonminority] employees or created an absolute bar to their advancement." *Id.,* 480 U.S. at ——, 107 S.Ct. at 1455 (O'Connor, J., concurring). The Albany plan called for replacement of a single incumbent white with a black when a qualified black individual applied for the

---

5. Once again the distinctions between a consent decree and a court order become relevant. Whereas the very nature of a consent decree mandated remand on this initial inquiry in *In re Birmingham,* the court's adjudication in *Johnson* dispenses with the need for further evidentiary findings. The Eleventh Circuit noted in *In re Birmingham* at footnote 22 that a judicial determination of past discrimination could make a difference. The court, however, was not presented with such a case and thus specifically did not resolve that issue. *In re Birmingham,* 833 F.2d at 1501. The case *sub judice* presents the very situation mentioned by the Eleventh Circuit, and this court finds that the prior adjudication of past discrimination satisfied the first inquiry as set forth above.

position. As discussed earlier, this plan was implicitly adopted as part of Judge Owens' Preliminary Injunction Order and was implemented pursuant to the Order's one-for-one hiring and promotion directive. *See* Permanent Injunction Order of Judge Owens, ¶ 4, in *Johnson v. City of Albany*, C.A. No. 1200 (M.D.Ga. Sept. 2, 1976). In *United States v. Paradise*, 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987), the Supreme Court recognized that "government bodies, including courts, may constitutionally employ racial classifications essential to remedy unlawful treatment of racial or ethnic groups subject to discrimination." *Id.*, 480 U.S. at ——, 107 S.Ct. at 1064. When the relief ordered makes a racial or ethnic distinction, it must be tested on an elevated scrutiny level. *Id.* The *Paradise* court, however, refused to establish a particular level of scrutiny because it found the relief granted survived even strict scrutiny, i.e., the relief was "narrowly tailored" to serve a "compelling governmental purpose." *Id.* (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 274, 106 S.Ct. 1842, 1846 (1986)). This court finds that the Plan utilized by Albany pursuant to Judge Owens' Preliminary Injunction Order also survives strict scrutiny.

"The government unquestionably has a compelling interest in remedying past and present discrimination by a state actor." *Id.*, 480 U.S. at ——, 107 S.Ct. at 1065. Prior to his Permanent Injunction Order, Judge Owens made a specific finding of past and present discrimination in hiring and promotion. This finding satisfies the Defendant's burden of articulating "a compelling government purpose."

In evaluating whether or not a race conscious remedy is narrowly tailored, several factors are relevant: "the necessity for the relief and the efficacy of alternative remedies, the flexibility and duration of the re-lief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *Id.*, 480 U.S. at ——, 107 S.Ct. at 1067. The relief granted in *Johnson* and the plan utilized by Albany pursuant to the Order called for one-for-one hirings and promotions. The promotion policy is presently at issue. Defendant Albany utilizes a system whereby a vacancy previously held by a white individual is filled by a qualified black individual. The Plan allows for waiver when no qualified black candidate applied. This relief was structured such that each department within the city government was treated separately and was able to come without the confines of the Order by accomplishing a proportion of black to white employees "at least equal to the proportion of blacks to whites in the working age population as shown by the most recent Albany, Georgia Standard Metropolitan Area reports of the Bureau of Census." Permanent Injunction Order of Judge Owens, ¶ 4, *Johnson v. City of Albany*, C.A. No. 1200 (M.D.Ga. Sept. 2, 1976). Several departments within the Albany governmental structure have accomplished this desired proportion and are no longer subject to Judge Owens' Order. The fact that the Police Department is still operating under the Order is indicative of the necessity of the ordered relief. Insofar as any impact on third parties is concerned, 50% of all promotions are automatically open to non-minorities, and the positions earmarked for black promotions are available to whites in the event that no qualified black candidate applies. Any burdensome effect which this plan might have on third parties is justified by the longstanding and continuing racial discrimination exercised by the City of Albany.[6] Based on these factors, the court finds that the Albany plan *is* "narrowly

---

**6.** The court is compelled to note that under the facts of this case, Defendant Washington Long was a qualified black who applied for and received the promotion in question. Plaintiff Mann at no point has questioned Defendant Long's qualifications and, in fact, recognized and conceded such at oral argument. The indication at oral argument was that Defendant Long may have been better qualified than Plain-tiff Mann. Thus, further analysis of Plaintiff's reverse discrimination claims would obviously soon breakdown.

In addition, no allegation has been made as to whether or not Plaintiff Mann had applied for the previous "white" position, or whether he has since applied for one. Thus, this case is an isolated attack on a broad-sweeping plan which has been operating smoothly for several years.

tailored" to serve a compelling government purpose." Accordingly, the second *Johnson v. Transp. Agency* inquiry is satisfied.

Defendants have shown the court that "there is an absence of evidence to support the nonmoving party's (Plaintiff's) case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Thus even if Plaintiff Mann's action is not precluded by the original *Johnson* action, *see* discussion and finding *supra*, section II–D, he cannot satisfy the Supreme Court's reverse discrimination inquiry as set forth in *Johnson v. Transp. Agency*, 480 U.S. 616, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). Summary judgment is, therefore, appropriate in favor of Defendants.