Mary E. **ALLEN**, et al., Plaintiffs,

v.

**SCHOOL BOARD FOR SANTA ROSA COUNTY, FLORIDA; et al.,** Defendants,

Minor Doe I, and Minor Doe II, Third–Party Plaintiffs,

v.

School Board for Santa Rosa County, Florida; et. al.

No. 3:10cv142/MCR/CJK.

United States District Court, N.D. Florida, Pensacola Division.

May 20, 2011.

---

Anita Leigh Staver, Mathew D. Staver, Liberty Counsel, Maitland, FL, Stephen M. Crampton, Liberty Counsel, Lynchburg, VA, Horatio G. Mihet, Liberty Counsel, Orlando, FL, for Plaintiffs.

Michael Patrick Spellman, Todd David Engelhardt, Robert Jacob Sniffen, Sniffen & Spellman PA, Tallahassee, FL, Paul R. Green, Johnson Green & Miller PA, Milton, FL, Benjamin James Stevenson, Benjamin Stevenson Esq., Pensacola, FL, Daniel Mach, Heather Weaver, American Civil Liberties Union, Washington, DC,

Maria Kayanan, Randall C. Marshall, ACLU of Florida, Miami, FL, for Defendants.

## *ORDER*

M. CASEY RODGERS, District Judge.

Pending before the court are legal briefs filed by the parties in response to the court's request for legal briefing of issues related to privity between the plaintiff teachers and the School Board and whether principles of collateral estoppel have any bearing on the plaintiffs' ability to challenge the consent decree facially in its entirety.[1] Having fully considered the arguments of the parties and relevant case law, the court makes the following legal determinations.

**Background**

The consent decree at issue in this case (doc. 1–1) is a negotiated settlement of an earlier law suit between two students and the Santa Rosa County School Board, wherein the School Board admitted that district-wide violations of the Establishment Clause had occurred and agreed to remedy them through the consent decree's injunction against future conduct of School Board employees. *See Minor Doe v. School Board for Santa Rosa County,* No. 3:08cv361 (N.D.Fla.). The consent decree governs the official capacity conduct of school officials at school events. The record of the prior lawsuit plainly shows that the negotiation of the consent decree was discussed publicly at School Board meetings and that the school district provided every school employee with a copy of the consent decree after it was entered. Distilled to its most basic terms, the consent decree prohibits school officials from proselytizing and praying with students during class and at school events. The consent decree states it was designed to ensure that the school district's practices and policies do not violate the students' First Amendment rights, and it provides that conduct not expressly prohibited is permitted as authorized by law. The consent decree includes a provision stating that if a court determines that any provision cannot be enforced, the parties agreed that such determination would not affect or invalidate the remaining provisions.

In the current lawsuit, the plaintiffs (teachers, parents, students, and community members), who were not parties to the original litigation, have brought constitutional challenges to the consent decree and various school policies both facially and as applied to them. The plaintiffs seek a declaration that the consent decree and school policies are unconstitutional, and they seek a permanent injunction enjoining the enforcement of the consent decree and the school policies implementing it. Underlying the challenges in this case is the question of whether the plaintiffs are bound by the terms of consent decree and whether it is enforceable against them. The determination of whether a potential remedy in this suit will include vacating the consent decree in its entirety will impact the scope of the parties' preparation for the consolidated preliminary injunction hearing and trial. Therefore, the court directed the parties to address the legal issues related to privity and collateral attack on a prior judgment so that these matters could be determined in advance of the hearing to the extent possible.

**Discussion**

 On its face, the consent decree binds "the parties hereto and their respec-

---

1. The court determined in a prior order that the plaintiffs had not presented a plausible claim that the consent decree is moot due to the graduation status of the Minor Does. (Doc. 178, at 7, dismissing count VI.)

tive heirs, successors, and assigns." (Doc. 1–1, at 9.) Its substantive provisions specify that the consent decree permanently enjoins the conduct of "school officials," which it defines as "the Defendants [2] and their officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them in his or her official capacity." (Doc. 1–1, at 3.) Rule 65 of the Federal Rules of Civil Procedure provides that an injunction binds the parties to the suit as well as "the parties' officers, agents, servants, employees, and attorneys" who receive actual notice of the injunction.[3] Fed.R.Civ.P. 65(d)(2)(A) & (B). The Supreme Court has explained that this rule is derived from the common law doctrine of "privity," which ensures that a party "may not nullify a decree by carrying out prohibited acts through aiders and abettors" who were not parties to the original proceedings. *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945). "It is generally accepted that an injunction may be enforced against a nonparty in 'privity' with an enjoined party." *Nat'l Spiritual Assembly of the Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848–49 (7th Cir.2010) (and cases cited therein) (hereafter *"Hereditary Guardianship"*).

 A consent decree is a judgment with the force of *res judicata. See Paradise v. Prescott*, 767 F.2d 1514, 1525 (11th Cir.1985) (also noting it has many attributes of a contract between the parties), *aff'd*, 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987). Principles of *res judi-*

*cata* dictate that parties to a prior proceeding that resulted in a judgment or consent decree, "or those with sufficient identity of interests with such parties that their interests are deemed to have been litigated in those proceedings," are precluded from attacking the prior judgment. *United States v. Jefferson County*, 720 F.2d 1511, 1518 (11th Cir.1983). Also, as a general rule, only a person who is designated as a party is bound *in personam* by a prior judgment. *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir.2010); *see also Martin v. Wilks*, 490 U.S. 755, 761 & 762 n. 2, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (legislatively overruled in part with regard to affirmative action plans in employment cases). Thus, ordinarily, nonparties are not bound or precluded by a prior order. *See Jefferson County*, 720 F.2d at 1518. Certain exceptions exist, however. The Supreme Court has recently identified six categories of exceptions to the rule against nonparty preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008); *see also Griswold*, 598 F.3d at 1292. It is not necessary to list all six exceptions here; suffice it to say that the second and third categories are applicable. Under the second exception, "nonparty preclusion may be justified based on a variety of preexisting substantive legal relationships between the person to be bound and a party to the judgment." *Taylor*, 553 U.S. at 894, 128 S.Ct. 2161 (internal marks omitted). The Court stated that "[q]ualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." [4] *Id.* The relation-

---

**2.** The defendants in the prior litigation were the School Board, the superintendent, and the principal of Pace High School.

**3.** Also bound are "other persons who are in active concert or participation with anyone

described in Rule 65(d)(2)(A) or (B)." Fed. R.Civ.P. 65(d)(2)(C).

**4.** These substantive legal relationships are sometimes collectively referred to as "privity," but privity also has been "used more

ship of employer/employee may fall within this exception where there is an identity of interests between them such that they are "legally identified" or "closely identified" with each other. *See Hereditary Guardianship,* 628 F.3d at 854 & 855. The third category of exception involves circumstances where a nonparty "was adequately represented by someone with the same interests who was a party to the suit." *Taylor,* 553 U.S. at 894, 128 S.Ct. 2161 (internal marks omitted). Importantly, these principles permitting nonparty preclusion do not apply to the extent it would "deprive[ ] a nonparty to the decree of his day in court to assert the violation of his civil rights." *Jefferson County,* 720 F.2d at 1518.

■ The plaintiffs were not parties to the prior proceedings but they admit that the employee plaintiffs are nonparties who are bound by the consent decree in their official capacities. The consent decree purports to enjoin only official conduct by school officials, which includes employees, officers, agents, affiliates, subsidiaries, servants and those acting in concert or privity with them in his or her official capacity; the plaintiff employees and official parent chaperones fall within this definition and received actual notice of the consent decree. With respect to their official duties at school events, the teachers and official parent chaperones are closely and legally identified with the School Board, which can be held liable for their official acts of endorsing religion. There is no assertion that the School Board did not adequately represent those official interests when negotiating the consent decree. Thus, the teachers and official parent volunteers, while acting in their official capacities, are bound to conduct their official duties with-

in the guidelines set by the consent decree and are precluded by principles of *res judicata,* including the nonparty preclusion exceptions listed above, from requiring the School Board to relitigate or justify the consent decree's very existence through a facial attack that seeks to invalidate the entire consent decree or enjoin all enforcement of it. *See generally Jefferson County,* 720 F.2d at 1518 ("A nonparty may not reopen the case and relitigate the merits anew; neither may he destroy the validity of the judgment between the parties."); *id.* (also stating, "the nonparty could not seek to relitigate the merits or reasonableness of the decree vis-a-vis the parties to the decree"). They may, however, assert the violation of their own civil rights through either facial challenges to particular provisions that impact those rights or as-applied challenges to the school's enforcement of the consent decree.

■ That said, whether certain conduct is "official capacity conduct" is a question of fact that will depend on a case-by-case evaluation of particular circumstances. The plaintiffs have raised plausible claims that their individual rights based on private nonofficial conduct are being violated due to the manner in which the consent decree is being implemented or due to portions of the consent decree that they allege to be overly broad, such that private nonofficial conduct is impermissibly swept into the definition of official conduct. These challenges are not barred by *res judicata* because the teachers and official parent chaperones were not in privity with the School Board with regard to their private nonofficial capacity free speech and religion conduct. Any remedy that would require the court to impose a narrowing construction on a particular definition

broadly to express the conclusion that nonparty preclusion is appropriate." *Taylor,* 553 U.S. at 894 n. 8, 128 S.Ct. 2161 (avoiding use

of the term "privity" when articulating the six categories of exceptions to nonparty preclusion due to the confusion it might cause).

within the consent decree to ensure it is constitutionally applied, or that would require enjoining particular enforcement conduct by the School Board, will not invalidate the consent decree in its entirety.

As to the remaining plaintiffs, they challenge certain provisions of the consent decree or school policy as unconstitutionally applied to them. They lack standing to seek to undo the consent decree in its entirety because they have no interest in the school's regulation of its employees' official-capacity conduct, except to the extent that the regulation of official conduct adversely impacts their own constitutional rights as private citizens in some specific manner.

Accordingly, it is hereby ORDERED that the court will not consider arguments at the hearing and in the trial briefs that include assertions that the consent decree is invalid *in toto* or that its enforcement should be completely enjoined.