Carold CAMPBELL, on Behalf of himself and all others similarly situated and, Bobby Wayne Cates, on behalf of himself and all others similarly situated, Plaintiffs-Appellees,

Wilbur D. Turner and Lawrence T. Lederer, Plaintiffs-Intervenors, Appellees,

v.

HALL–MARK ELECTRONICS CORP., etc., et al., Defendants-Appellees.

William E. BROCK, Secretary of the United States Department of Labor, Plaintiff-Appellant,

v.

HALL–MARK ELECTRONICS CORP., et al., Defendants-Appellees.

No. 86–7118.

United States Court of Appeals, Eleventh Circuit.

Jan. 23, 1987.

David L. Hutner, U.S. Dept of Labor, Office of Sol., Plan Benefits Sec. Div., Robert N. Eccles, Washington, D.C., for Dept. of Labor.

Charles R. Smith, Jr., Harvey B. Morris, Huntsville, Ala., for Carold Campbell and private plaintiffs.

Joe B. Harrison, Dallas, Tex., for Hall-Mark Electronics.

Before HILL and FAY, Circuit Judges, and MORGAN, Senior Circuit Judge.

HILL, Circuit Judge:

The Secretary of Labor appeals from the district court's denial of his motion for leave to intervene to oppose a settlement order between private litigants, which was agreed to by the parties and approved by the district court. The sole issue presented by this appeal is the timeliness of the Secretary's motion to intervene.

## I. FACTS

This appeal arises out of two consolidated actions, one a private class action and the other a suit brought by the Secretary of Labor, both alleging substantially identical breaches of fiduciary duties under the Employment Retirement Income Security Act of 1974 ("ERISA"). The lawsuits allege that the trustees of the defendant's profit sharing plan, all officers and stockholders of the defendant Hall-Mark Electronics, sold Hall-Mark stock held by the plan back to the corporation at substantially less than its actual value. The suits allege that the corporation and the individuals made illegal profits on the subsequent sale to another corporation of all Hall-Mark stock.

The Department of Labor ("DOL") investigated this transaction in late 1981 and 1982 through its Dallas regional office, but took no action against the corporation or the trustees at that time. On November 24, 1984, certain participants of the profit sharing plan initiated the *Campbell* lawsuit. After receiving copies of the private plaintiffs' pleadings, the DOL then filed the *Brock* case on December 13, 1984. On February 4, 1985, the district court ordered the two cases consolidated for all purposes.

After the two actions were consolidated, counsel for the private plaintiffs and counsel for the Secretary worked closely on virtually every phase of the litigation. Counsel for the two parties conducted extensive discovery together, including sharing the cost of numerous depositions. Counsel for the Secretary discussed trial strategy with the private plaintiffs' attorneys, and appeared at several pretrial conferences before the district court with the private plaintiffs and defendants. The Secretary's counsel took part in settlement negotiations between the private parties until some time in November 1985. In late November 1985, after the Secretary had withdrawn his participation, the parties to the *Campbell* suit informed counsel for the Secretary that they had reached a settlement in principal. All parties agree that the Secretary's counsel did not participate in the negotiations immediately leading to this agreement. At this point, the Secretary learned only that defendants would offer each participant of the plan $35 per share allocated to his account, which could be accepted or rejected by each participant, and that the parties had agreed to a proposed fee award to the private plaintiffs' attorneys.

The details of the settlement were not finalized until January 23, 1986, and the Secretary's counsel received a copy of the proposed agreement the next day. On February 5, 1986, the date set for the district court hearing on approval of the settlement, the Secretary filed a Memorandum In Opposition to Approval of the Partial Settlement Agreement and a motion for leave to intervene as of right in the *Campbell* case. Prior to the hearing, the district court orally denied the Secretary's motion to intervene on the ground that the motion was untimely, and restricted the DOL's role to monitoring the settlement approval process. The Secretary subsequently filed with the district court a list of objections to the settlement agreement and an Offer of Proof setting forth facts relating to the timeliness of the Secretary's motion for leave to intervene. On February 11, 1986, the district court entered a formal order

approving the settlement agreement and denying the Secretary's motion for leave to intervene.[1]

## II. DISCUSSION

■ The sole issue before this court on appeal is whether the district court was correct in determining that the Secretary's motion for leave to intervene was untimely filed. Because the question of timeliness is largely committed to the discretion of the district court, we review its decision under an abuse of discretion standard. *Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986); *United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir.1983).

■ This court has adopted a four-factor test to assess the timeliness of a motion for leave to intervene. These four factors include:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Jefferson County*, 720 F.2d at 1516; *see also Howard*, 782 F.2d at 959; *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir.1977). Applying these factors to the facts of the present case, we conclude that the district court did not abuse its discre-

tion in determining that the Secretary's motion was untimely filed.

As to the first factor, the DOL certainly knew or reasonably should have known of its interest in the *Campbell* case long before the day of the district court hearing on approval of the settlement, when the Secretary finally moved for leave to intervene. The Secretary is correct that a court "cannot impute knowledge that a person's interests are at stake from mere knowledge that an action is pending, 'without appreciation of the potential adverse effect an adjudication of that action might have on one's interests....' " *Howard v. McLucas*, 782 F.2d at 959 (citing *Jefferson County*, 720 F.2d at 1516). In this case, however, the Secretary's knowledge extended far beyond the mere pendency of the *Campbell* suit. The Secretary participated in extensive discovery together with counsel for the private plaintiffs. In addition, the Secretary was aware of settlement negotiations between the private parties, which had been under way for several months prior to the release of the final agreement on January 23, 1986. The Secretary had in fact participated in these negotiations until some time in November 1985, at which time he indicated that he no longer desired to be involved in the negotiations. Possessing actual knowledge that the private parties were proceeding toward a settlement, the Secretary could not then bury his head in the sand and later claim that he was unaware of the potential adverse effect such a settlement might have on his own interests.

The Secretary relies on this court's decision in *Howard v. McLucas*, 782 F.2d 956 (11th Cir.1986), arguing that a potential intervenor cannot judge whether his interests will be affected in a particular case

---

1. In its March 5, 1986 denial of the Secretary's stay motion, the district court set forth more detailed findings concerning its earlier denial of the Secretary's motion for leave to intervene. In particular, the district court indicated that it found the Secretary's motion untimely because: (1) the Secretary initially elected to file the *Brock* case rather than intervene in the *Campbell* case; (2) the Secretary failed to intervene in

the *Campbell* case until the day the hearing on approval of the partial settlement was set, although he could have foreseen that private settlement talks in *Campbell* would occur and in fact knew they were occurring; and (3) the Secretary failed to explain why he did not intervene at the start of the settlement discussions between the private parties.

until he is actually informed of the particular remedy which the settling parties seek to employ. This reliance is misplaced. In *Howard,* the would-be intervenors were white and non-black minority employees at an Air Force facility who sought to oppose a negotiated consent order in a class action employment discrimination suit brought by black employees. These parties sought to challenge a promotional remedy, which they claimed would adversely affect their employment interests. In holding that their motion to intervene was timely, the court considered it particularly important that the would-be intervenors had not been in close contact with either party regarding the lawsuit. They were not involved in that suit or in any other related litigation, thus the court held that they could not have anticipated the particular remedy which was ultimately proposed and to which they strongly objected.

The relationship of the parties in the present action, however, clearly distin-

guishes this case from *Howard.* Unlike in *Howard,* the Secretary was in close contact with the private plaintiffs for virtually the entire pendency of the litigation. Because early on the *Campbell* and *Brock* cases were consolidated for all purposes, the Secretary knew virtually everything about the private plaintiffs' case. The Secretary not only knew of ongoing settlement negotiations in the *Campbell* case, counsel for the DOL even participated in settlement talks until the Secretary decided to withdraw from the negotiations in November 1985. Given his knowledge of and actual participation in the settlement negotiations, the Secretary knew or reasonably should have known that any settlement would compromise the private plaintiffs' claim, which was essentially the same claim that the DOL was interested in carrying to ultimate judgment.[2] The close relationship of the Secretary to the *Campbell* case and his actual knowledge of ongoing settlement negotiations therefore sufficiently distinguish this case from the facts of *Howard,*[3] and

---

**2.** The nature of the settled claim in this case also distinguishes it from *Howard.* In *Howard,* there was no way for the intervenors to know before-hand that a settlement would necessarily touch their interests at all. The plaintiffs' complaint in that case made a general request for "broad affirmative relief." *Howard,* 782 F.2d at 959. The plaintiffs thus could have recovered back pay or a variety of other employment discrimination remedies without affecting the employment interests of the intervenors. Given the wide range of remedial possibilities available to the *Howard* plaintiffs, the intervenors could not have predicted that the consent order would contain the particular promotional remedy of which they complained.

The type of claim advanced by the private plaintiffs in this case, however, is significantly different from the open-ended prayer for relief in *Howard.* In the present case, ERISA exclusively defines the substantive rights and remedies of the parties. Both the private plaintiffs and the Secretary may be said to have been seeking everything to which they are entitled under ERISA, and no more. The Secretary knew of settlement negotiations between the private parties, and obviously knew that any settlement must involve some compromise of the plaintiffs' claims. The Secretary therefore knew from the time these settlement talks began that efforts were being made to conclude the *Campbell* lawsuit on terms which necessarily

would be less than a complete victory under ERISA. The only thing the Secretary learned upon announcement of the details of the settlement on January 23, 1986 was exactly how much less than full ERISA relief the plaintiffs accepted. If, therefore, it is the Secretary's position that no settlement should be approved which does not provide full relief under ERISA, he clearly was on notice that his interests were endangered when he first learned that the parties were contemplating compromise or settlement.

**3.** The present case is more analogous to the situation in *United States v. Jefferson County,* 720 F.2d 1511 (11th Cir.1983), which involved a motion to intervene filed by a group of white, male fire fighters seeking to oppose negotiated consent decrees in several consolidated race and sex discrimination actions. In *Jefferson County,* the court denied the motion as untimely because the fire fighters "knew at an early stage in the proceedings that their rights could be adversely affected, as was evidenced by their conversations with the City regarding the tactics the City should use in defending the action; yet they failed to seek intervention." 720 F.2d at 1516. The court further admonished that the fire fighters "having made an apparently ill-advised decision to rely on others to advance their interests, knowing that they could be adversely affected, cannot now be heard to complain." *Id.* at 1517.

render unreasonable the length of time which the Secretary waited before moving to intervene.

The remaining three factors also militate against a finding that the Secretary's motion for leave to intervene was timely filed. Allowing the Secretary to intervene would significantly prejudice the existing parties, primarily because of the delay to the plan participants, including both class members and non-class members, who have elected to take the settlement offer. Intervention at this point would only jeopardize a legitimately negotiated, accepted, and approved settlement. As to the third factor, the Secretary's interests will not be significantly prejudiced by this settlement. The proposal provides a substantial monetary offer to all plan participants, the very people the Secretary seeks to protect. In addition, the Secretary certainly may continue to litigate his own case in pursuit of whatever broader public policy interests he deems important.

Finally, there are no unusual circumstances suggesting that the Secretary's motion should be considered timely. The only unusual circumstance, that of the DOL's initial investigation in 1981 and 1982, in fact militates in favor of appellees' position. The DOL terminated its investigation of Hall-Mark in early 1982, apparently finding no actionable violation of ERISA. The private plaintiffs then gathered their own evidence and pursued their own action against the defendants. Only after receiving the private plaintiffs' complaint in the *Campbell* case did the Secretary file his action. In these circumstances, the Secretary should not be allowed to ride on the coattails of the private plaintiffs and then to pull on those coattails in an effort to delay resolution of their case.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in denying the Secretary's motion for leave to intervene. Accordingly, the judgment of the district court is

AFFIRMED.