**Linda DAVIS, David Efron, Linda Martens and Genevieve Williams, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, a Georgia corporation, Defendant.**

No. 89–2839–CIV.

United States District Court, S.D. Florida.

May 27, 1993.

Jesse Creed Jones, Bailey, Hunt, Jones & Busto, P.A., Miami, FL, Jerome W. Hoffman, Florida Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, on behalf of intervenor/plaintiffs.

Martin L. Steinberg, William F. Hamilton, Holland & Knight, Miami, FL, for defendant.

## AMENDED ORDER

NESBITT, District Judge.

This cause comes before the Court upon the Motion to Intervene filed by the State of Florida, by and through its Attorney General Robert A. Butterworth ("the State") and upon the Motion to Disqualify filed by Defendant Southern Bell Telephone & Telegraph Company ("Southern Bell"). The Court addresses these and all other pending motions below.

## I. THE STATE'S MOTION TO INTERVENE

The State's motion to intervene requests that this Court authorize the State to intervene as both an additional representative of the as yet uncertified class alleged by Plaintiffs and as *parens patriae,* the representative of all natural persons resident in the State of Florida. The request is made pursuant to Rule 24(a)(2) and Rule 24(b)(2) of the Federal Rules of Civil Procedure. The Court resolves the issue pursuant to Rule 24(b)(2) and therefore does not consider the contentions of the parties with respect to Rule 24(a)(2).

The Court must resolve two sets of issues in order to permit the State to intervene pursuant to Rule 24(b)(2). First, the Court must determine that it has authority to permit intervention under rule 24(b)(2). Second, if the Court decides in favor of intervention, it must define the capacity in which it will permit the State to intervene.

### Authority to Permit Intervention

Rule 24(b)(2) governs permissive intervention and provides that:

Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and

the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b)(2). Thus, in order to have authority to permit the State to intervene pursuant to this rule, the Court must find that (1) the State filed a timely application for intervention and (2) the State's claims share a common question of law or fact with those advanced by Plaintiffs in this litigation. The Court addresses these issues separately below:

1) Timeliness

■ Southern Bell contends that the State's attempt to intervene in this litigation is untimely because the State has been aware of Southern Bell's alleged wrongdoing for a long period of time and because intervention would significantly prejudice Southern Bell. The State responds that, although it has been aware of the pendency of this litigation for some time, the case has not progressed sufficiently to preclude intervention. The State also asserts that Southern Bell would not be prejudiced by the State's intervention because Southern Bell knew that the State was performing an investigation of Southern Bell and because Southern Bell attempted to negotiate to prevent the State from filing its Complaint in Intervention.

The Eleventh Circuit has articulated a four factor test to assess the timeliness of a motion to intervene. These four factors include:

(1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Campbell v. Hall–Mark Electronics Corp.,* 808 F.2d 775, 777 (11th Cir.1987) (quoting *United States v. Jefferson County,* 720 F.2d 1511, 1516 (11th Cir.1983)). Applying these factors to the present case, the Court finds that the State's Motion to Intervene is timely.

Although the State has been aware of the pendency of this litigation for some time, the issues involved and the conduct relevant to those issues are complex. In order to ensure that a factual foundation sufficient to support its claims existed, the State was obligated to conduct an extensive investigation. The State completed this investigation only recently. As a consequence, the Court finds that the State's delay in moving for intervention is excusable.

Even if the delay were not excusable, the Court finds that no party would suffer prejudice through the State's intervention. Southern Bell asserts that it would be prejudiced because the State is engaged in a criminal investigation related to this litigation. According to Southern Bell, this investigation, in conjunction with the close cooperation between the State and Plaintiff's counsel, would risk "interjecting the aura of other sanctions into this case". This risk, however, no longer exists because the State has reached a settlement with Southern Bell concerning the criminal aspect of the State's investigation.

Southern Bell also asserts that intervention would prejudice Southern Bell by complicating and delaying the proceedings. Specifically, Southern Bell contends that intervention by the State as both *parens patriae* and an additional class representative will create "long, drawn out argument(s)" concerning "whether the State is permitted to assert a particular claim in the capacity that it contends it is acting at any particular time". In addition, Southern Bell contends that the State has threatened to multiply the issues and parties in the case and that this will occasion delay.

All of Southern Bell's contentions lack merit. The Court is confident that the section of this Order defining the manner in which the State will be permitted to intervene will moot any dispute concerning the capacity in which the State will assert its claims. As explained more fully below, the Court has decided to permit the State to intervene as an additional class representative, but not as *parens patriae.* As a result, the State will intervene in only one capacity.

There will therefore be no confusion as to the capacity in which the State's will assert its claims.

Moreover, there is no evidence that the State will attempt to multiply issues or parties upon intervention. The State is the only party seeking intervention. The Court cannot perceive how the intervention of a single party will create the risk of a substantial increase in the number of parties, particularly where the intervening party asserts the same claims as those of the existing plaintiffs.

Southern Bell relies on two Eleventh Circuit decisions in which that court denied intervention to parties that had waited several years after becoming aware of the litigation before moving to intervene. *See Campbell v. Hall–Mark Electronics Corp.*, 808 F.2d 775 (11th Cir.1987); *U.S. v. Jefferson County*, 720 F.2d 1511 (11th Cir.1983). In both cases, however, the court grounded its denial on the fact that the party seeking intervention moved to intervene immediately prior to proceedings that were likely to conclude the litigation. *Campbell*, 808 F.2d at 775 (precluding the Secretary of Labor from intervening in ERISA dispute where Secretary delayed filing motion to intervene until day of hearing on approval of partial settlement); *Jefferson County*, 720 F.2d at 1511 (precluding intervention by individual fire fighters in race and sex discrimination lawsuit against several governmental entities where the fire fighters did not move to intervene until after a hearing on several proposed consent decrees which would have terminated litigation).

The present case stands on an entirely different footing. Although the case has been pending for more than two years, discovery on the merits has not been completed and dispositive motions have not been filed. As a consequence, there is no indication that this litigation is close to conclusion. Accordingly, the Court finds that *Campbell* and *Jefferson County* are not analogous to the present situation and that those cases do not compel denial of the State's motion.

Finally, the Court finds that allowing the State to intervene would not be inequitable. For some time prior to the filing of this motion, Southern Bell was aware that the State was considering intervention. Southern Bell knew that the State was conducting an investigation of its activities and apparently negotiated with the State in an effort to prevent the State from attempting to intervene. As a result, Southern Bell had ample time to prepare for the prospect of intervention by the State. The Court concludes that the State's motion to intervene is not untimely.

### 2) Common Question of Law and Fact

As noted above, Rule 24(b)(2) requires that there exist a question of law or fact common to both the intervenor's claims and those of the existing plaintiffs. The requirement is easily met in the present case. As an additional class representative, the State will assert the *same* claims as those of the existing Plaintiffs. Accordingly, the *same* questions of law and fact will arise with respect to both the claims of the State and those of Plaintiffs.

As both of the elements of Rule 24(b)(2) are satisfied, the Court grants the State's motion to intervene. The Court now turns to the capacity in which the State will enter the litigation.

### Capacity in Which The State Will Intervene

The State requests to intervene in two capacities—as an additional class representative and as *parens patriae*. The Court addresses the request with respect to each capacity below.

### 1) Additional ·Class Representative

■ Southern Bell objects to the State's motion to intervene as an additional class representative on two grounds. First, Southern Bell asserts that the State cannot serve as an additional class representative because it does not subscribe to the Inside Wire Maintenance Service ("IWMS"). Second, Southern Bell contends that the State's claims are not typical of those of the alleged class because the claims require proof of individual reliance, which will vary widely among the individual class members.

In response to Southern Bell's first argument, the Court notes that the State has submitted evidence indicating that several State agencies subscribe to this service. Even in the absence of this evidence, the Court would find that the State is an adequate class representative for the reasons detailed below. The Court notes that at least one court has held that a state attorney general is an appropriate class representative in the context of a class action based on claims of monopolization. *In re Ampicillin Antitrust Litigation,* 55 F.R.D. 269 (D.D.C. 1972).

The Court does not reach Southern Bell's second argument. According to Southern Bell, this argument is equally applicable to the existing class representatives. As a consequence, if the Court were to address this argument in the context of the present motion, the Court would effectively resolve a portion of Plaintiffs' motion for class certification. The Court previously deferred ruling on this motion.

The Court does find that the State is capable of serving as an adequate class representative. In order to serve as an adequate class representative, a party must demonstrate that it will vigorously prosecute the action and will provide adequate financing and competent counsel. *Brooks v. Southern Bell,* 133 F.R.D. 54 (S.D.Fla.1990). There is no evidence that the State will not vigorously prosecute this action. On the contrary, the fact that the State has actively pursued an extensive investigation of Southern Bell's activities with respect to IWMS suggests that the State will prosecute this action quite vigorously. The State also possesses excellent counsel and ample financing. As a consequence, the Court concludes that the State qualifies as an excellent representative and grants the State's motion to intervene as an additional class representative. *See In re*

*Antibiotic Antitrust Actions,* 333 F.Supp. 278 (S.D.N.Y.1971) ("[I]t is difficult to imagine a better representative of the retail consumers within a state than the state's attorney general. Historically, the common law powers of the attorney general include the right and duty to take actions necessary to the maintenance of the general welfare and his presence in these actions is but a modern day application of that right and duty. His representation of the class provides the class with experienced counsel possessing sufficient resources and professional assistance to meet the obligations inevitably placed on a representative party under Rule 23").

2) Parens Patriae

The Court, however, denies the State's motion to intervene as *parens patriae.* The State's request to intervene as *parens patriae* is grounded on 15 U.S.C. § 15c and Fla.Stat.Ann. § 542.22. Both statutes empower a state attorney general to initiate a civil action on behalf of all natural persons resident in the state based on particular antitrust violations[1].

These *parens patriae* statutes were designed to provide state attorney generals with an alternative to class actions to redress antitrust violations which inflict small injuries on a large number of consumers. *See* H.R.Rep. 499, 94th Cong., 2d Sess., pt. 1 at 6, 7 ("House Report"), U.S. Code Cong. & Admin. News 1976, pp. 2572, 2575–2577. As the House of Representatives explained:

Attempts to use the revised class action provisions of the 1966 amendments to Rule 23 of the Federal Rules of Civil Procedure to fashion a mechanism for consumer redress in this situation have been disappointing. Many courts have found that large consumer classes predicated upon small individual claims present insur-

1. 15 U.S.C. § 15c provides that: Any attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant, to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title ...

Fla.Stat.Ann. § 542.22(2) provides that: The Attorney General, or state attorney after receiving written permission from the Attorney General, may bring a civil action in the name of the state, as parens patriae on behalf of natural persons residing in this state, to recover on behalf of those persons threefold damages sustained by reason of any violation of s. 542.18 or 542.19, and the cost of such suit, including a reasonable attorney's fee ...

mountable problems of 'manageability' in the conduct of the litigation. These manageability problems include proper notice, the complexity of evidentiary issues, and distribution of any recoveries.

House Report at 6, 7, U.S. Code Cong. & Admin. News 1976, at 2576.

As developed below, however, the Court believes that intervention by the State as *parens patriae* would place counsel currently representing both Plaintiffs and the State ("the contractor attorneys") in a conflict of interest that would warrant disqualification of these attorneys. Such disqualification would seriously delay these proceedings, which have already been pending for more than three years. Intervention would thus frustrate, not promote, the State's interest in consumer protection. The Court believes that the State can adequately protect the parties on whose behalf it may intervene as *parens patriae*—"natural persons residing in Florida"—through participation in this litigation as an additional class representative. *Cf.* House Report at 10 ("The Judiciary Committee recognized that there may be occasions when extensive investigations and pretrial proceedings and the interests of all parties involved convince the court that, in the interests of justice, an action which was brought as a ... parens patriae lawsuit should be transformed and maintained as a class action. It might, for instance, be fairer to all parties for the court to order that a parens patriae action become a ... (class) action when both businesses and natural persons have been injured in exactly the same manner."). Accordingly, the Court denies the State's Motion to Intervene as *parens patriae*. The Court now turns to Southern Bell's Motion to Disqualify.

## II. SOUTHERN BELL'S MOTION TO DISQUALIFY

Southern Bell's motion to disqualify presents the following five issues: 1) whether the motion is timely, 2) whether Southern Bell has standing to bring the motion, 3) whether the contractor attorneys' representation of Plaintiffs and the State ("dual representa-

tion") violates Rule 1.11(b) of the American Bar Association's ("ABA") Model Rules of Professional Conduct ("Model Rules") and warrants disqualification pursuant to that rule, 4) whether the contractor attorneys' dual representation creates a conflict under Rule 1.11(a), 1.11(c), or 1.7(b) sufficient to warrant disqualification of those attorneys, and 5) whether the fee arrangement included in the Contractor Agreement between the State and the contractor attorneys is unethical and compels disqualification of the contractor attorneys.

### Timeliness

Plaintiffs object to Southern Bell's motion on the ground that it is untimely. In particular, Plaintiffs assert that Southern Bell was aware that Plaintiffs' counsel was also assisting the State in the civil and criminal investigations that are related to this case more than ten months prior to the filing of this motion. The record reveals, however, that the parties were actively engaged in settlement negotiations over this period. Bingaman aff. ¶ 13; Antonacci aff. ¶ 22. The pendency of active settlement negotiations has often been held to justify delay in the filing of a motion to disqualify. *See, e.g., EEOC v. Indiana Bell Telegraph Co.,* 641 F.Supp. 115 (S.D.Ind.1986) (holding that a delay of over three years was excusable where delay was occasioned by settlement activity); *EEOC v. C.W. Transport, Inc.,* 658 F.Supp. 1278 (W.D.Wis.1987) (holding that 14 month delay was excusable where 8 months of the delay was attributable to settlement activity). The Court perceives no reason to depart from this general rule in the present case.

### Standing

Plaintiffs also contend that Southern Bell lacks standing to bring this motion. In support of this contention, Plaintiffs rely on the Fifth Circuit's decision in *In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83 (5th Cir.1976)[2] for the proposition that, with narrow exceptions, "only a client or former client has standing to challenge rep-

---

2. The Court notes that *Yarn Processing* is binding precedent in this jurisdiction, as the case was decided by the Fifth Circuit prior to the creation of the Eleventh Circuit.

resentation on grounds of conflict of interest."

■ Plaintiffs reliance on *Yarn Processing* is misplaced. In *Yarn Processing,* the court explained that:

> To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist. It would place in the hands of the unauthorized surrogate powerful presumptions which are inappropriate in his hands. Courts do not generally examine the motives of the moving party in a disqualification motion. Once the preliminary showing is made by the former client, the motion must be granted regardless of whether the former client gains an advantage at the expense of his adversary ... *We are reluctant to extend this where the party receiving such an advantage has no right of his own which is invaded.*

530 F.2d at 90 (emphasis added). The last sentence of this passage makes clear that, where the rights of a particular party may be compromised by representation in which opposing counsel is engaged, then that party has standing to bring a motion to disqualify, regardless of whether the party is a client or former client of the attorney or firm whose representation the party challenges.

■ In the present action, Southern Bell contends that dual representation gives the contractor attorneys access to investigative powers not available to private litigants. According to Southern Bell, this access creates the risk that the contractor attorneys will use that authority on behalf of the private Plaintiffs in this case and that such use would violate Rule 1.11 of the Model Rules. Southern Bell concludes that the risk that it will be adversely affected by the contractor attor-

neys' dual representation gives Southern Bell standing to bring this motion.

As more fully developed below, the Court believes that the real problem with joint representation of governmental and private party does not stem from the risk that government resources and information might benefit one private party at the expense of another. That situation is both common and unobjectionable. *See Woods v. Covington Cty. Bank,* 537 F.2d 804, 818 (5th Cir.1976). The problem occurs, however, where decisions concerning the use of government resources and information are guided by private, rather than public, interests. In that situation, there is considerable risk that these decisions will be made improperly—in favor of private interests at the expense of the public interest. When government resources and information are used improperly in this manner, a private litigant opposing a party with access to governmental authority suffers an *unfair* disadvantage. The risk that Southern Bell will suffer such disadvantage, although insufficient to warrant disqualification, is sufficient to give Southern Bell standing to object to the representation at issue [3].

### Rule 1.11(b)

■ Southern Bell asserts that the dual representation in which the contractor attorneys are engaged violates Rule 1.11(b) of the Model Rules. That rule provides that:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which

---

**3.** The Court notes that, in cases involving successive government and private employment, authorities in other jurisdictions have allowed parties who were not clients or former clients of the attorneys involved in the challenged representation, and who were unaffected by that representation, to bring motions to disqualify. *See, e.g., Kessenich v. Commodity Futures Trading Comm.,* 684 F.2d 88, 94 (D.C.Cir.1982) ("Kessenich has also moved to disqualify Clinton Burr, general counsel of Rosenthal & Company, from acting in this court as an attorney for Rosenthal. Although there is little or no indication that Kessenich has been or will be prejudiced by the continuation of Burr as attorney for Rosenthal, we grant the motion in light of the uncertainty surrounding the situation and the effect continued representation may have on public confidence in the CFTC.").

that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

Under rule 1.11(e), information is classified as confidential for purposes of rule 1.11(b) if it meets the following three conditions: 1) the information was obtained under government authority, 2) the government is prohibited by law from disclosing the information to the public or has a legal privilege not to disclose the information, and 3) the information is not otherwise available to the public.

Southern Bell contends that the contractor attorneys have obtained the following types of confidential information by virtue of their position as government and private counsel: 1) civil investigative demand ("CID") materials, 2) grand jury materials, 3) state confidential work product, and 4) state witness interviews. The contractor attorneys respond that the material described fails to meet the definition of confidential governmental information set out in rule 1.11(e), that the government has consented to the release of the material to the contractor attorneys, and that government consent cures any conflict identified in rule 1.11(b).

On its face, rule 1.11(b) applies only to successive, not joint representation. Rule 1.11 is entitled "*Successive* Government and Private Employment". Moreover, the language of the rule indicates that "successive" employment occurs where the lawyer in question formerly represented the government, terminated that representation, and subsequently commenced representation of a private client. The rule states that "a lawyer having ... confidential government information about a person acquired when the lawyer *was* a public officer or employee may not *represent* a private client whose interests are adverse ...". In the present case, the contractor attorneys did not undertake representation of the State until *after* they had been engaged by the private Plaintiffs. Moreover, the contractor attorneys continue to represent both parties. The Court concludes that rule 1.11(b) does not apply under the circumstances of this case.

Even if rule 1.11(b) does apply to this case, the Court finds that the rule has not been violated with respect to any of the materials identified by Southern Bell. The Court applies the rule to each of these materials below.

### 1) CID Materials

■ As part of its investigation, the State issued CIDs to various parties. Southern Bell contends that the responses these CIDs constitute confidential government information and that the contractor attorneys have obtained these responses in violation of rule 1.11(b). However, the affidavit of Anne Bingaman, one of the contractor attorneys, indicates Southern Bell produced these responses pursuant to routine discovery requests. Southern Bell has submitted no counter evidence to rebut Ms. Bingaman's affidavit. Moreover, CID response have been held to be subject to compulsory discovery. *See In re Domestic Air Transp. Antitrust Litigation*, 142 F.R.D. 354 (N.D.Ga.1992) (plaintiffs in class action involving possible price fixing were entitled to copies of any CID depositions taken by Department of Justice which were in defendants' possession). The Court concludes that the CID materials at issue in the instant case were "otherwise available" within the meaning of rule 1.11(e) and that the materials therefore do not constitute confidential information for purposes of rule 1.11(b).

### 2) Grand Jury Materials

Southern Bell also contends that the contractor attorneys are in possession of information obtained by the State through subpoenas and grand jury testimony. The contractor attorneys and the State have supplied the Court with affidavits indicating that the criminal division of the Attorney General's Office has not shared any of this information with either the civil division of the Attorney General's Office or with the contractor attorneys. Southern Bell offers no evidence to the contrary and simply asserts that the fact that the contractor attorneys and both divisions of the Attorney General's Office participated jointly in settlement negotiations indicates that attorneys from the criminal divi-

sion must have shared grand jury materials with the contractor attorneys. The Court, however, cannot accept Southern Bell's assertion without further support. The Court concludes that there is insufficient evidence that the State shared grand jury materials with the contractor attorneys to warrant disqualification of those attorneys at this time.

### 3) Work Product and Other Privileged Material

Southern Bell also contends that the State violated rule 1.11(b) by sharing with the contractor attorneys work product and other privileged materials generated in the course of its investigations of Southern Bell. Southern Bell presents no evidence supporting its contention beyond reference to the fact that the contractor attorneys and the counsel employed by the State conducted joint settlement negotiations with Southern Bell. Moreover, Southern Bell fails to identify particular information which it believes was shared. Consequently, the Court is not convinced that the State actually shared any privileged material with the contractor attorneys.

Further, a decision by the State to share privileged materials with the contractor attorneys would not constitute a violation of rule 1.11(b). As noted above, rule 1.11(b) only applies to information within the scope of rule 1.11(e). Rule 1.11(e) covers material which was obtained under government authority, which the government is prohibited from disclosing or has a legal privilege not to disclose, and which is not otherwise available to the public.

■ Rule 1.11(e) must be viewed in light of the primary purpose of rule 1.11(b)—to ensure government fidelity to the public interest. *See* Model Rules rule 1.11(b), comment ("a lawyer should not be in a position where benefit to a private client might affect performance of the lawyer's professional functions on behalf of the public authority"). This purpose is not compromised where the

government waives its privilege with respect to confidential, privileged information after determining that such disclosure would benefit the public interest. Under these circumstances, the litigant to whom the government makes disclosure receives no unfair advantage[4]. Southern Bell's expert concurs. C. Wolfram, *Modern Legal Ethics* 464 (1986) ("No reason exists to prevent a former government client from consenting, if it is in compliance with other law, to a former lawyer's use of confidential government information in a subsequent private practice representation, and because client consent would clearly suffice under MR 1.6, it should also suffice under MR 1.11(b)."). Accordingly, the Court finds that where the government properly waives its privilege with respect to privileged information, the information falls outside the scope of rule 1.11(e). The prohibitions of rule 1.11(b) therefore do not apply.

■ In the present case, the Court is confident that the State has properly waived any privilege with respect to the materials at issue. Attorneys employed directly by the Attorney General's office took an active, and by no means subordinate role, in the State's investigation of Southern Bell. Given the level of their participation, it is reasonable to conclude that these attorneys contributed to the decision to waive the privileges with respect to the materials at issue. There is no evidence to the contrary. Moreover, had the attorneys opposed waiver, they had the power to preclude it. The investigation was, after all, *the State's* investigation.

As importantly, none of the attorneys employed by the Attorney General's office engaged in the dual representation of which Southern Bell complains. As a consequence, these attorneys were not subject to a conflict between public and private interests at the time the decisions to waive were made. Further, there is no evidence that these attorneys acted out of concern for any but the public interest. The Court concludes that the State properly waived its privilege with

---

**4.** The commentary to rule 1.11(b) makes clear that the rule is aimed at *unfair* advantage obtained by private litigant through access to confidential government information. Model Rules rule 1.11, comment (*"unfair* advantage could ac-

crue to the private client by reason of access to confidential government information obtainable only through the lawyer's government service.") (emphasis added).

respect to the materials at issue and that this waiver removes these materials from the ambit of both rules 1.11(e) and 1.11(b).

#### 4) Witness Interviews

Southern Bell also asserts that the contractor attorneys acquired confidential government information through witness interviews. The information extracted in witness interviews conducted by the contractor attorneys could have been acquired through normal discovery channels, however. This information is therefore "otherwise available" and does not constitute confidential government information within the meaning of rule 1.11(e)[5].

Information that the State acquired through interviews that its attorneys conducted, and that the State later shared with the contractor attorneys, might also have been independently obtainable through normal discovery processes. Further, the State's decision to share this information with the contractor attorneys constitutes a waiver of any privilege covering the material. As a consequence, the material falls outside the scope of rule 1.11(b) for the reasons set out in the preceding section.

The only material that falls within the scope of the rule is information gathered by the State that is subject to a legal prohibition against disclosure. Southern Bell has presented no evidence that the State transmitted any such information to the contractor attorneys. The Court concludes that the in-

formation derived from witness interviews that is currently in the possession of the contractor attorneys does not constitute the source of a violation of rule 1.11(b).

### Representation of Public and Private Interests

Southern Bell also contends that the dual representation at issue creates several conflicts of interest. Southern Bell rests this contention on two, separate sources of law. First, Southern Bell argues that dual representation violates rules 1.11(a) and 1.11(c) of the Model Rules. Second, Southern Bell argues that the Supreme Court's decision in *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), along with several related cases, preclude dual representation. The Court addresses each of these contentions separately below.

#### 1) Model Rules

According to Southern Bell, dual representation violates both rules 1.11(a) and 1.11(c) of the Model Rules. The two rules address *successive* government and private employment and are closely related. Under Rule 1.11(a), absent government consent, a lawyer cannot represent a private client in a matter in which the lawyer participated substantially while in government service, while under rule 1.11(c), a lawyer who previously represented a private client in a particular matter cannot

---

**5.** The Court notes that the only evidence offered to support Southern Bell's contention that the contractor attorney's used the authority of the Attorney General's office to coerce witnesses to disclose information which the witnesses would otherwise not have disclosed consists of what Southern Bell characterizes as "the Jennifer Eaton incident". According to Southern Bell, a paralegal employed by one of the contractor attorneys informed Ms. Eaton, a witness, that the contractor attorneys represent the Attorney General's office.

None of the testimony from Ms. Eaton's deposition which Southern Bell has cited to the Court, however, indicates that Ms. Eaton's awareness of this representation induced her to disclose *any* information. To the contrary, Ms. Eaton's testimony suggests that this awareness made her less, not more, willing to cooperate with the contractor attorneys. The following question and answer illustrates this:

Q. Did you—did you believe at the time that you should see him because he was from the Attorney General's office, and you should see him as a citizen of Florida or a citizen who wanted to be talked to?
A. Well, I think when he mentioned the Attorney General's office that it scared me more than inspired me to come see him.

Absent any evidence that the contractor attorneys have actually obtained evidence through abuse of their status as counsel for the Attorney General, the Court is unwilling to disqualify them. *See* Annotated Model Rules of Professional Conduct 203 ("Rule 1.11(b), like its counterpart in the more general Rule 1.10(b), appears to only operate when the lawyer has actual, rather than constructive, knowledge of confidential information.").

represent the government in the same matter[6].

■ The comment to rule 1.11 makes clear that rule 1.11(a) and 1.11(c) govern only successive, not joint, representation of public and private interests. Specifically, the penultimate paragraph to the comment provides that:

> Paragraphs (a) and (c) do not prohibit a lawyer from *jointly representing a private party and a government agency when doing so is permitted by Rule 1.7* and is not otherwise prohibited by law. (Emphasis added).

Southern Bell contends that the contractor attorneys' dual representation in the present case is both successive and joint because the attorneys represented Plaintiffs in this action prior to assuming representation of the State. Southern Bell concludes that the quoted paragraph does not render rules 1.11(a) inapplicable to the present case.

Southern Bell's argument, however, would effectively read the quoted paragraph out of the comment. Under Southern Bell's reading, representation can only be joint, but not successive, where representation of both the governmental and private interest began at precisely the same moment. All other situations involving simultaneous representation of both governmental and private interests would be both joint and successive and, according to Southern Bell, subject to rules 1.11(a) and 1.11(c). The quoted paragraph would thus have an extremely narrow range of applicability.

The Court does not agree that the drafters of the comment intended the scope of the quoted passage to be so limited. The title of rule 1.11—*Successive* Government and Private Employment—suggests that the drafters intended to indicate that the rule does not apply to non-successive, i.e. joint, government and private employment. This effort to distinguish successive and joint representation suggests that the drafters considered the two to be mutually exclusive. Moreover, the language in both rule 1.11(a) and 1.11(c) indicates that the drafters intended to confine the meaning of the term "successive" to the situation in which the first representation terminates before the second representation commences. Rule 1.11(a), for instance, provides that "a lawyer shall not represent a private client in connection with a matter in which the lawyer *participated* ... as a public officer or employee", while rule 1.11(c) provides that "a lawyer serving as a public officer or employee shall not participate in a matter in which the lawyer *participated* ... while in private practice". The Court concludes that the drafters of these rules did not intend the term "successive" to cover simultaneous representation and that the dual representation at issue is properly analyzed under rule 1.7.

Rule 1.7 provides that:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

> (2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be

---

6. Rule 1.11(a) provides that:

> Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
>
> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.

Rule 1.11(c) provides that:

Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

> (1) participate in a matter in which the lawyer participated personally and substantially while in private practice or non-governmental employment unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter ...

materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

All parties agree that the positions of Plaintiffs and the State are not directly adverse and that rule 1.7(a) is therefore inapplicable to the present case. The parties also agree that rule 1.7(b) is applicable but disagree about whether the contractor attorneys' dual representation violates that rule.

Rule 1.7(b) does not require an actual conflict in order compel disqualification. The comment explains that:

A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent judgment in considering alternatives or forecloses courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

The contractor attorneys' dual representation creates three sources of potential conflict. To begin with, the contractor attorneys have an incentive to maximize the sum of attorney's fees awarded as part of any settlement of Plaintiffs' claims against Southern Bell. Accordingly, the contractor attorneys have an incentive to condition any settlement of the State's claims against Southern Bell on the inclusion of a generous attorney's fee award in any settlement of Plaintiffs' claims. The contractor attorneys might therefore be inclined to reject a settlement that would serve the public interest because of the settlement's inconsistency with their own interests. Southern Bell contends that two near settlements with the State broke down for this very reason [7].

■ The key to a proper analysis of this conflict lies in the recognition that it is *not* a conflict covered by rule 1.7(b). Rule 1.7(b) addresses conflicts created by duties to clients with inconsistent interests. The conflict just described represents a conflict between a *lawyer's* self interest and the interests of his or her client. A conflict of this sort exists in virtually every class action, however, because attorney's fees are included in the settlement of most class action. The lawyer representing the class always has an incentive to condition settlement on the provision of a generous attorney's fee award. The class lawyer might therefore refuse to settle where settlement would serve the interests of the class. This conflict, however, is not sufficient to warrant disqualification of

7. Southern Bell submitted the affidavits of several of its attorneys in support of its contention that its negotiations with the State concerning a global settlement of all of the State's claims against Southern Bell broke down because the State conditioned settlement on a large attorney's fee award in the settlement of this case. The contractor attorneys submitted the affidavit of Deputy Attorney General Peter Antonacci in response. Mr. Antonacci's affidavit indicates that the State withdrew from negotiations because Southern Bell refused to agree to provide its subscribers with certain information about the optional telephone services for which they were being billed. As there is no evidence that Mr. Antonacci's affidavit is in bad faith, the Court accepts his explanation of the State's reason for termination the settlement negotiations. The explanation indicates that the termination was based on the State's concern for the public interest. The termination is thus not evidence of any conflict of interest.

The State's termination of subsequent settlement negotiations is also not evidence of a conflict of interest. Southern Bell asserts that the State terminated settlement negotiations with respect to three particular classes of claim against Southern Bell because Southern Bell filed the instant motion to disqualify. Mr. Antonacci concedes that the State decision to terminate was based, in part, on the filing of the motion to disqualify. Mr. Antonacci's affidavit indicates, however, that the State had determined that a resolution of the *Davis* case on the merits was in the *public* interest and that the State conditioned settlement on the resolution of this case on the merits in order to serve that interest. The State might reasonably have construed Southern Bell's decision to file the instant motion constituted a rejection of that condition.

the lawyer for the class because the Court must approve any attorney's fee award. *Woods,* 537 F.2d at 818–819. Court approval represents an independent check on the attorney's performance of his or her duties and encourages the lawyer to avoid the pursuit of excessive fees at the expense of the interests of the class.

In the present action, the Court has admitted the State as an additional class representative. Court review of any settlement agreement will have the same effect on the conduct of the contractor attorneys in this action as it does in other class actions—it will ensure that the class attorneys remain attentive to the interests of the class. The Court concludes that this first conflict does not warrant disqualification of the contractor attorneys.

■ A second potential conflict arises from the contractor attorneys access to the State's investigative resources. Southern Bell contends that this access creates the risk that the contractor attorneys will use those resources for the benefit of the private class alleged in this case. As noted above, however, a use of public resources which results in private benefit is unobjectionable where the decision regarding use is consistent with the public interest. *See Woods,* 537 F.2d at 818. As an additional class representative, the State shares the interest of the other plaintiffs in this action and will share the interest of the alleged class, if the Court later certifies that class. As a consequence, there is a congruence between the public and private interests in this case and there is therefore minimal risk that the public interest will be sacrificed. Rule 1.7(b) is sufficiently liberal to permit this risk.

This Order prevents the possibility of a third potential conflict. If the Court had admitted the State as both *parens patriae* and as an additional class representative, the contractor attorneys might have been engaged in the representation of two different classes. As counsel for the State in its capacity as *parens patriae,* the contractor attorneys would have represented all natural persons currently resident in Florida. If the Court later decided to certify the private class alleged in this case, the contractor at-

torneys, as counsel for the class, would represent all natural persons in Florida *and,* among others, all business affected by IWMS.

A conflict might have arisen due to the differences in membership between these two classes. As counsel for the State as *parens patriae,* the contractor attorneys would have had a duty to seek maximal recovery for the natural persons resident in Florida. As counsel for the class, however, the contractor attorneys would have had a duty to apportion recovery equitably among all members of the class. In order to fulfill the latter duty, the contractor attorneys could not have apportioned all of the amounts recovered to the natural persons resident in Florida. Failure to so apportion the recovery, however, would have violated the contractor attorneys' duty to those natural persons as counsel for the State as *parens patriae.* The conflict between these duties would have been irreconcilable.

This Order avoids that conflict by limiting the State's role to that of an additional class representative. In that capacity, the State will represent the private class alleged by Plaintiffs. As a consequence, the contractor attorneys will function as counsel for only one class and are unlikely to experience conflict of the type discussed above.

### 2) *Young*

■ Southern Bell also asserts that the contractor attorneys dual representation is prohibited by the Supreme Court's decision in *Young v. United States ex rel. Vuitton,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) and several related cases. In *Young,* the Supreme Court reversed a defendant's criminal contempt convictions where counsel for the plaintiffs in related civil litigation was appointed as special prosecutor for purposes of the criminal contempt prosecution. *Id.* 481 U.S. at 787, 107 S.Ct. at 2124. All of the other cases cited by Southern Bell also involved situations in which the attorney engaged in the representation at issue served as both a criminal prosecutor and as private counsel in a related civil matter. *In re Peiffer,* 27 B.R. 675 (Bkrtcy.N.D.Ala.1982) (pre-

cluding district attorney from initiating criminal prosecution when he or she has interest in civil litigation arising from the same facts); *Sinclair v. State*, 278 Md. 243, 363 A.2d 468 (1976) (precluding district attorney from prosecuting a criminal case while representing private parties in related civil matters); *Matter of Lantz*, 420 N.E.2d 1236 (Ind.1981) (precluding part-time prosecutor from using his position as prosecutor to collect civil debts for a private client); *Commonwealth v. Eskridge*, 529 Pa. 387, 604 A.2d 700 (1992) (precluding attorney from serving as prosecutor where attorneys' law partners were representing victims in case).

The concern underlying these cases is the same as the one discussed above—that the public interest not be sacrificed for private gain. As the Supreme Court in *Young* explained:

> A prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client. Conversely, a prosecutor may be tempted to abandon a meritorious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges.

As explained more fully above, that concern does not arise here because there is minimal difference between the public and private interests in this case. Both the State's and Plaintiffs' interests depend on the success of this class action.

The Court believes that any minimal difference between the public and private interests does not warrant disqualification of the contractor attorneys. As noted, *Young* and the other cases cited above involved criminal prosecutions. Criminal sanctions are generally considerably more severe than civil sanctions. The severity of criminal sanctions requires that particular care be taken to ensure that they be applied only where application is consistent with the public interest. Thus, the Supreme Court in *Young* held that virtually *any* potential created by an attorney's role as a criminal prosecutor and as private

counsel compels disqualification of the attorney[8].

The lower severity of civil sanctions is appropriately paralleled by a more liberal standard governing potential conflicts created by the representation of government and private interests in related civil matters. The Supreme Court has not explicitly defined the standard governing such potential conflicts. This Court finds that the standard set out in rule 1.7 is appropriate and adopts that standard as determinative.

The Court assessed the potential conflicts under rule 1.7 created by the contractor attorneys' dual representation of the State and Plaintiffs in this civil action above and concluded that none of these conflicts warrant disqualification of the contractor attorneys. Accordingly, the Court denies Southern Bell's request for disqualification pursuant to *Young*.

### The Fee Arrangement

■ Southern Bell also objects to the fee arrangement between the contractor attorneys and the State. Under that arrangement, the contractor attorneys are entitled to 75% of any attorney's fee award in this litigation. According to Southern Bell, the desire to maximize the amount of this award will induce the contractor attorneys to prosecute this action more vigorously than might be consistent with the public interest. Southern Bell relies on *People ex rel. Clancy v. Superior Court of Riverside County*, 39 Cal.3d 740, 218 Cal.Rptr. 24, 705 P.2d 347 (1985).

As noted above, the prospect of high attorney's fees in class actions always create the risk that the attorney representing the class will put his or her interest in fees ahead of the interests of the class. Court supervision of attorney's fees, however, prevents the award of unreasonably high attorney's fees and encourages fidelity to the interests of the class. As this supervision is sufficient under the law to protect the interests of a private class, the Court perceives no reason why it should not also be sufficient to protect the

---

**8.** More specifically, the Court held that counsel for a party that is the beneficiary of a court order may never be appointed as prosecutor in a contempt action alleging violation of that order.

public interest under the same circumstances. *See Woods*, 537 F.2d at 818–819.

Southern Bell's reliance on *Clancy* is misplaced. In *Clancy*, a lawyer who was acting as counsel for both the government and a private party in civil abatement proceedings and who was operating under a contingency fee was disqualified. The attorney's fees that the lawyer stood to receive if successful were not subject to court review and approval. As a consequence, the independent check on attorney conduct that exists in the present case was absent in *Clancy*. Accordingly, *Clancy* is distinguishable from the present case.

Based on the foregoing, it is hereby

ORDERED and ADJUDGED that the State's Motion to Intervene is GRANTED. The State shall intervene in this action as an additional class representative, but not as *parens patriae*, for the reasons set forth above.

It is also ORDERED and ADJUDGED that Southern Bell's Motion to Disqualify Plaintiffs' Counsel is DENIED for the reasons set forth above.

It is also ORDERED and ADJUDGED that:

1) Plaintiffs' Motion to Strike Southern Bell's Reply on Disqualification and to Strike Related Papers and Plaintiffs' Alternative Motion to permit the Filing of Plaintiffs' Reply are DENIED.

2) Southern Bell's Motion to Extend to Respond to Plaintiff's Motion to Strike is DENIED.

3) William S. Duffey, Jr.'s Motion for Leave to Respond to Motion for Rule 11 Sanctions Contained in Plaintiffs' Motion for Enlargement of Time in Which to Respond to Plaintiffs' Motion to Strike Southern Bell's Reply on Disqualification and to Strike Related Papers is DENIED.

4) William S. Duffey, Jr.'s Request for Instructions and/or Status Conference is DENIED.

5) Southern Bell's and Its Counsels' Request for Evidentiary Hearing on Plaintiff's Claim for Rule 11 Sanctions is DENIED.

6) Plaintiffs' Request for Oral Argument on Southern Bell's Motion to Disqualify Plaintiffs' Counsel is DENIED.

7) Plaintiffs' Request for Oral Argument on Status Report Issues and Pending Motions is DENIED.

8) Plaintiffs' Motion for Leave to Reply to Southern Bell's Response to Plaintiffs' Status Report is DENIED.

DONE and ORDERED.